[No. 30380.   Department Two.   December 29, 1947.]

ELDON E. UPCHURCH *et al.*, *Respondents*, v. CECIL HUBBARD *et al.*, *Appellants*.[1]

[1]Reported in 188 P. (2d) 82.

*Edge, Davenport & Edge* and *Keith & Winston,* for appellants.

*Robertson & Smith,* for respondents.

STEINERT, J.—Plaintiffs brought suit to recover damages for the death of their minor son, alleged to have been caused by the negligent acts of one of the defendants in the operation of a motor vehicle. The action was tried before a jury, resulting in a verdict in favor of plaintiffs. Upon the denial of defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, the court entered judgment, from which defendants appealed.

There is very little dispute concerning the facts in the case. Appellant Cecil Hubbard, to whom we shall hereinafter refer as though he were the sole appellant, was employed by the United States post office department as a mail carrier in the city of Spokane. For a number of years prior to the date of the accident here involved, he drove a truck, delivering parcel-post packages in the residential districts of the city. On August 12, 1946, at about two-thirty o'clock p. m., he was so engaged, in the vicinity of Sinto avenue and Lindeke street. He was driving a 1941 Dodge pickup truck, upon the rear portion of which was a panel

body wherein parcel-post packages were carried; on each side of the truck were a door and a running board.

Accompanying appellant on this particular occasion was an assistant, Byron G. Boyer, who sat on the right-hand side in the cab of the truck.

Driving west along Sinto avenue, appellant stopped in front of a house numbered 2615, which is on the south side of the avenue. This was in accordance with his usual custom, in residential districts, of parking on that side of the street on which parcel-post mail was to be delivered. Appellant then made a delivery at number 2623 Sinto avenue, which was a few doors west of the place where the truck was parked, while his assistant, Boyer, made a delivery to a house numbered 2609, which was a short distance east of the parked vehicle.

Boyer returned to the truck first and was already seated in his accustomed place when appellant returned. Upon appellant's return to the vehicle, he observed a boy, Eldon Richard Upchurch, standing on the right-hand running board talking to Boyer. Eldon, who was eight years and three months old, lived with his parents at number 2615 Sinto avenue. Appellant had seen the boy on former occasions but had only a slight acquaintance with him.

About the time that appellant seated himself in the truck, Eldon, who was still standing on the running board, inquired of him how far he was going. Appellant replied: "Up in the next block." Thereupon Eldon said: "I am going for a ride." To this appellant responded: "That is not a good idea, you had better get off." The boy retained his position, however, and appellant thereupon started his motor and proceeded forward, intending to make a delivery in the next block, on the north side of Sinto avenue.

We quote pertinent portions of appellant's testimony descriptive of the happening of the accident:

"Q. Will you explain how he was standing on the running board and how, if at all, he was holding on? A. The windshield of the truck was open. He had his right arm hooked around the windshield post. He was facing almost straight into the truck, a little backwards. And I proceeded up to

the intersection in low very slowly and across the intersection. Q. Will you raise your voice just a little, please, Mr. Hubbard? A. Across the intersection and he showed no intentions of getting off, so, I supposed he would go on up to the next stop with me and, so, I shifted gears and proceeded on up the street very slowly, that is, I didn't jerk the car or anything. I wasn't going any place in any hurry, taking into consideration that the boy was on the running board. And he got about two blocks, or two lots up the street, I believe, it was in front of 2710. . . . A. (continuing) We had got about as far as 2710 Sinto and he said, 'This is as far as I can go.' I couldn't tell you his exact words, I don't know, but that was the impression I got, he said, 'I can't go any further, that is as far as I can go' and he immediately stepped off. As he spoke, he was releasing his hold on the truck. Mr. Boyer, who was with me, reached for him, that is, made a motion to reach for him, and said, 'Don't get off' but he couldn't reach him, there was no time to stop the truck, no time to do anything, he was just off."

The only dispute in the evidence is with reference to the rate of speed at which the truck was traveling when the boy stepped off the running board. Respondents' evidence was to the effect that he was traveling at approximately twenty miles an hour; appellant's evidence was that he was driving at a speed of twelve or fifteen miles an hour. The difference is of no great importance.

Prior to stepping off the running board, the boy had not shown any indication of fright, but had seemed to be enjoying the ride. As he stepped off, however, he was facing the rear of the truck and, in consequence thereof, was thrown backwards violently upon the pavement, sustaining injuries to his head, from which he died two days later.

Appellant admitted that, prior to and at the time of the accident, he was familiar with the law of the state and with an ordinance of the city, making it unlawful to transport any person upon the running board, fenders, hood, or other outside part of any vehicle. He also admitted knowledge of the post-office regulations regarding the transportation of people in or on the truck.

At appellant's request, the trial court submitted to the jury an instruction on contributory negligence, which ad-

vised the jury that, if it found that the deceased, Eldon Richard Upchurch, did not exercise the same degree of care as would be exercised by a boy of the same age, experience, and apparent ability to understand and appreciate the dangers involved, then Eldon Richard Upchurch would be guilty of contributory negligence, and respondents could not recover in this action.

Since the jury returned a verdict in respondents' favor, they obviously found that the boy was not guilty of contributory negligence.

We turn now from the facts to the law pertaining to the case.

■ The authority for the commencement and maintenance of this action by the parents of their deceased minor child is found in Rem. Rev. Stat., § 184 [P.P.C. § 3-23], which provides:

"A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child. . . ."

This section of the statute and §§ 183, 183-1 [P.P.C. §§ 3-13, 3-15], all relating to actions for wrongful death, are patterned upon Lord Campbell's Act (9-10 Victoria (1846), chapter 93) although differing in certain respects from the provisions of the English act.

■ As stated in *Hedrick v. Ilwaco R. & Nav. Co.,* 4 Wash. 400, 30 Pac. 714,

"The object and purpose of these statutes is to provide a remedy whereby the family or relatives of the deceased, who might naturally have expected maintenance or assistance from the deceased, had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained."

■ By the great weight of authority, such statutes are not "survival statutes," but create a new cause or right of action. 16 Am. Jur. 48, Death, § 61; 25 C. J. S. 1077, Death, § 15. This court has adopted that principle. *Brodie v. Washington Water Power Co.,* 92 Wash. 574, 159 Pac. 791; *Crevelli v. Chicago, Milwaukee & St. P. R. Co.,* 98 Wash. 42, 167 Pac. 66, 66 L. R. A. 1918A, 206; *Grant v. Fisher Flouring*

*Mills Co.,* 181 Wash. 576, 44 P. (2d) 193; *Ryan v. Poole,* 182 Wash. 532, 47 P. (2d) 981; *Maciejczak v. Bartell,* 187 Wash. 113, 60 P. (2d) 31.

■ A limitation upon such independently created right, recognized by this court and elsewhere generally, is that the wrongful act or default must be of such character as would have entitled the injured person to maintain an action and recover damages, had not death ensued; stated conversely, if the deceased never had a cause of action, no right of action accrues under the wrongful death statute. 16 Am Jur. 61, Death, § 82; *Ryan v. Poole, supra.*

In the *Ryan* case, *supra,* we said:

"It is the general rule, under the wrongful death statutes of the various states, and it is the holding of this court, that such a statute creates a new cause of action and is not a survival statute, and that the measure of damages which the heirs or personal representatives could recover is different from that which the person killed could have recovered had he survived the injury and brought an action for damages. It is also generally held, and the decisions of this court are to the same effect, that, if a deceased could not have recovered damages for his injury had he survived, his heirs or personal representatives cannot recover, because their right of recovery is dependent upon the right which the deceased would have had had he survived. If the deceased had no cause of action, none accrues to his heirs or personal representatives."

The decision of the present case thus depends upon the solution of the question whether the minor, Eldon Richard Upchurch, had he survived, would have been entitled to maintain an action and recover damages for the injuries sustained by him. Appellant contends that the minor could not have maintained such action and bases his contention upon Rem. Rev. Stat., Vol. 7A, § 6360-121 [P.P.C. § 295-95], commonly referred to as the "host and guest" statute, which reads as follows:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have

been intentional on the part of said owner or operator. . . ."

This statute has been construed by this court to mean that no recovery can be had thereunder unless the owner or operator of the motor vehicle purposely brought about the "accident," or intended to cause injury. *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A.L.R. 998, affirmed on rehearing *En Banc,* 186 Wash. 700, 59 P. (2d) 1183, 111 A.L.R. 1011; *Carufel v. Davis,* 188 Wash. 156, 61 P. (2d) 1005; *Lassiter v. Shell Oil Co.,* 188 Wash. 371, 62 P. (2d) 1096; *Parker v. Taylor,* 196 Wash. 22, 81 P. (2d) 806; *Taylor v. Taug,* 17 Wn. (2d) 533, 136 P. (2d) 176.

There is, of course, no contention by the respondents in this case that appellant purposely brought about the accident or intended to cause injury to the child. It might thus, at first blush, seem that the boy, had he lived, would have had no cause of action against appellant because of the inhibitions of the statute, since it appears that he was being "transported by the operator" of the motor vehicle; that, technically at least, he was at the time a "licensee" upon the vehicle; and that the accident was unintentional on the part of the appellant.

However, there is a factor present in this case which must be taken into consideration and which, when considered in connection with the host and guest statute quoted above, requires a construction of that statute as affected by this factor.

As has already been stated, appellant admitted that he knew at the time of the occasion in question that it was unlawful to carry anyone on the running board of the truck, and that it was forbidden by post-office-department regulations. Rem. Rev. Stat., Vol. 7A, § 6360-115, and also a traffic ordinance of the city of Spokane, specifically provide:

"It shall be unlawful for any person to transport any persons upon the running board, fenders, hood or other outside part of any vehicle, except that this provision shall not apply to authorized emergency vehicles."

It, therefore, not only was unlawful for appellant knowingly to transport the boy on any outside part of the

truck, but also it was his positive duty to see to it that the boy got off, or was removed from, the running board before the vehicle was put in motion. His failure in that respect was, as found by the jury, a proximate cause of the injury. Any question of contributory negligence on the part of the boy has been eliminated by the verdict of the jury.

Appellant's situation then is this: By his own unlawful act, he created, as between the boy and himself, the alleged relationship of licensor and licensee; his own negligence was a proximate cause of the accident, resulting in the injury and death of the boy; but, since the boy was a "licensee" on the truck and since the accident was unintentional, appellant claims that respondents have no cause of action, and that there can be no recovery against him. Stated in another way, appellant's contention amounts to this: Except for the host and guest, or licensor and licensee, statute, appellant would be liable; but since, by an act on his part which was unlawful, he nevertheless created the relationship of licensor and licensee between himself and the boy, which, under the statute, technically exempted him, the licensor, from liability, there can be no recovery against him.

■ We do not believe that the legislature had any such thought or result in mind when it enacted the host and guest statute, nor do we think the statute should be so construed. As appears by the cases hereinabove cited, the purpose of that statute was to prevent collusive action between host and guest, committed with the intent to defraud casualty insurance companies; it was not the purpose of the statute to promote fraud or injustice by permitting one to claim immunity from liability for his negligence on the ground that he occupied a relationship which was exempt from liability, when that very alleged relationship was created by his own unlawful act. We believe that the legislature meant, and that the statute should be construed to mean, that to exempt the owner or operator of a motor vehicle from liability for the injury to, or the death of, a person transported by him, the relationship alleged to exist between the owner or operator and the person transported must be a lawful one, or at least not an unlawful one, nor

one dependent for its creation upon some unlawful act of the owner or operator himself. To hold otherwise would make the statute an instrument of gravest injustice, operating not as a shield but as a sword.

■ The same thought and the same conclusion may be expressed in a little different way. A "license," moving from licensor to licensee, is the conference of a right to do some act which without such authorization would be illegal, or would be a trespass or a tort. Black's Law Dictionary (3d ed.) 1110. For appellant in this case to be a licensor, and the boy to be a licensee, it was necessary for appellant to authorize the boy to ride upon the running board of the truck. A statute and an ordinance, however, forbade such method of transportation. Consequently, appellant could not lawfully authorize the boy to ride upon the running board, and therefore appellant could not be a licensor, nor the boy a licensee, within the meaning of those terms as used in the host and guest statute. In other words, appellant by his own unlawful act put himself without the pale of the protection afforded by the statute which he seeks to invoke.

No case involving a situation similar to the one here has been cited to us by counsel, nor have we on independent search found any. We believe, however, that our construction of the statute is the proper one, and that any other construction would be contrary to the intention of the legislature which enacted the statute and inconsistent with the purposes sought to be accomplished thereby.

Appellant cites three cases which he contends are decisive of the instant case: *Schock v. Ringling Bros. and Barnum & Bailey Combined Shows,* 5 Wn. (2d) 599, 105 P. (2d) 838; *Shiels v. Audette,* 119 Conn. 75, 174 Atl. 323, 94 A. L. R. 1206; *Tilghman v. Rightor* (Ark.), 199 S. W. (2d) 943.

The *Schock* case, *supra,* involved a situation where a group of children, while watching a circus unload its paraphernalia in a railroad yard, was struck by one of the wagons which, in descending a steel runway, got out of control. It was held that the children were mere licensees to whom the circus company owed only the duty of not willfully or wantonly injuring them.

That case was but an instance of a licensee going on the premises of another, for a purpose not connected with the business conducted thereon, and the ordinary rule with reference to the care owing to such persons was therefore applicable. The case did not in any way involve the host and guest statute with which we are here primarily concerned, and for that reason the decision in that case has no bearing here.

In the *Shiels* case, *supra,* three boys were invited by an employee of the defendant, and with the latter's knowledge, to ride in defendant's truck as it was driven to a coal yard about a mile distant and there loaded with coal, after which the defendant told the boys to climb up on the truck. On the return trip, two of the boys stood on the running board and while there, were engaged in throwing pieces of coal at mail boxes along the road. One of the boys, thirteen years of age, fell from the truck and was injured. His father brought suit to recover for loss of the boy's services and for money expended in caring for his injuries. The statutes of Connecticut deprived a guest in a motor vehicle of any right of action against its owner or operator arising out of an accident unless that accident was intentional on the part of the owner or operator or was caused by his reckless disregard of the rights of others. The supreme court of errors of Connecticut held that the boy was a guest within the meaning of the statute; that, being such guest, he could not maintain an action based upon negligence against the owner or operator; and that therefore the parent could not maintain such action for his consequential damages.

While it appears in that case that the boy was permitted to ride on the running board, which may have constituted negligence as a matter of fact under the particular circumstances, it does not appear that, at that time, in Connecticut, there was a statute, or any city ordinance, making it unlawful to transport a person on the running board of a motor vehicle. In other words, while the boy occupied the status of a guest, that relationship was not the product of the unlawful and inhibited act of the owner or operator of

the truck. The situation thus came squarely within both the letter and the spirit of the host and guest statute of that state. As shown above, we have a different situation here, arising out of the fact that appellant could not lawfully transport the boy on the running board either as a guest or as a licensee.

In the *Tilghman* case, *supra*, defendant's truck and trailer, engaged in hauling a load of cinders, overtook three boys walking along the highway. On a signal from one of the boys, the truck was stopped, and the boys clambered aboard the trailer and took a position in the front end of the trailer bed, sitting on the cinders, with their feet hanging down over the front edge of the trailer. A little later, as the truck was being brought to a stop to enable the boys to alight, the youngest boy, seven years of age, fell, or was thrown, from the trailer to the pavement and was run over by the front wheels of the trailing vehicle. The injuries sustained resulted in death, and the boy's father brought suit against the owner of the truck to recover damages. The statute of Arkansas provided that no person transported by the owner or operator of a motor vehicle as a guest, without payment for such transportation, shall have a cause of action against such owner or operator for damages for personal injuries or death resulting from such operation, while in, entering, or leaving such motor vehicle, unless such injury shall have been caused by the willful misconduct of such owner or operator. The supreme court of Arkansas held that the boy was a guest within the meaning of the statute, and that, therefore, no recovery could be had for his injuries or death. The court cited with approval the *Shiels* case, *supra*.

It does not appear from the opinion in that case that, in the state of Arkansas, there was any statute making it unlawful to transport persons in a motor vehicle in the manner shown by the facts in that case. The question of the lawfulness of the act by which the relationship of host and guest was created was not involved in the case.

For the reasons hereinbefore stated, the judgment is affirmed.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.