[Nos. 35855, 35856.   En Banc.   January 31, 1963.]

GLADYS GRAY, *as Administratrix, Appellant*, v. R. L. GOOD-
SON *et al., Respondents.*

GLADYS GRAY, *as Administratrix, Appellant*, v. GENERAL
MOTORS CORPORATION, *Respondent.*\*

\*Reported in 378 P. (2d) 413.

*John Caughlan*, for appellant.

*Olwell & Boyle*, for respondents Goodson.

*Lycette, Diamond & Sylvester* and *Meade Emory*, for respondent General Motors Corporation.

HUNTER, J.—This appeal is from a judgment of dismissal entered in two wrongful death actions which were consolidated in the trial court. As the factual situation, giving rise to the legal problems involved, is somewhat complicated, it is necessary to a clear disposition of this appeal that we set forth the sequence of events material to the issues.

(1) On September 28, 1956, Eugene Robert Woods died as the result of injuries received in an automobile accident in which the defendant (respondent) Frances C. Goodson was involved. (2) On October 4, 1956, Effie E. Woods, surviving spouse of the deceased, was appointed, by court

order, the administratrix of the estate of her deceased husband. (3) Action was commenced by the administratrix, Mrs. Woods, for wrongful death against the defendant Goodson on January 12, 1957. (4) On March 8, 1957, on petition of Mrs. Woods, an order was entered setting aside property in lieu of homestead to herself as the surviving spouse. That order states that the estate of Eugene Robert Woods did not exceed $6,000, as disclosed by the inventory and appraisement on file, and that the petitioner was entitled to an award of all the property. The order further provides

". . . that said award is made in lieu of homestead and exemptions and that there shall be no further administration of said estate, *and that the administratrix heretofore appointed shall not further administer said estate, but that she shall be discharged and exonerated and that notice to creditors be dispensed with.*" (Italics ours.)

(5) Thereafter, in the Goodson action, a judgment of dismissal was entered upon a jury verdict in favor of the defendant on November 23, 1957. Notice of appeal was given by Effie Woods. (6) On February 6, 1958, Effie Woods, as administratrix of her husband's estate, commenced an action against General Motors Corporation, the trial of which was suspended pending the outcome of the appeal in the Goodson case. (7) On January 10, 1960, Effie Woods died. Arguments were heard by this court in the appeal of the judgment in the Goodson case on January 26, 1960. Neither this court nor counsel was informed at that time of Mrs. Woods' death. By our decision, reported in *Woods v. Goodson*, 55 Wn. (2d) 687, 349 P. (2d) 731 (1960), we reversed the judgment in favor of defendant Goodson and remanded the cause for a new trial. (8) On August 8, 1960, Gladys Gray, daughter of the deceased Effie Woods (but not the daughter of Eugene Robert Woods), was substituted, by appointment, as administratrix of the estate of Eugene Woods. (9) On September 7, 1960, counsel for the defendants, Goodson and General Motors Corporation, were first informed of the death of Effie Woods. (10) The present plaintiff, Gladys Gray, was shortly thereafter substituted as party plaintiff

in both actions and both defendants were granted leave to file amended answers.

The consolidated cases came on for trial and at the close of the plaintiff's opening statement, the complaints in both actions were dismissed. The trial court's reasoning was as follows: The order of March 8, 1957, which purported to discharge Effie Woods as administratrix, was effective to end her power as her husband's personal representative. Thereafter, Effie Woods properly could not institute the wrongful death action against the defendant General Motors Corporation, since RCW 4.20.010 requires that the personal representative maintain the action. Furthermore, there no longer existed a party plaintiff in the Goodson action after the order of March 8, 1957. As the substitution of a party plaintiff must be made within one year, according to RCW 4.20.050, the substitution of Gladys Gray in September of 1960 was subject to attack. The plaintiff Gladys Gray has appealed.

The plaintiff contends that the order of March 8, 1957 was ineffective to terminate all power in Effie Woods to act as the personal representative of the estate of Eugene Woods. It is argued that only by following the proper statutory procedures could Effie Woods be completely discharged as administratrix; that the order in the award in lieu of homestead proceeding was only effective to discharge her with respect to the assets under consideration; that as her power to act as a statutory agent in a wrongful death action was not effected, she remained, until her death, as the party plaintiff in the Goodson action and she properly could commence the action against General Motors Corporation. The plaintiff's argument concludes that, as her substitution as party plaintiff occurred within a year after Effie Woods' death, she, as administratrix of Eugene Woods' estate, is the proper plaintiff in both actions. It is crucial, therefore, to determine the effect of the order of March 8, 1957, which purported to discharge Effie Woods as administratrix of her deceased husband's estate.

■ In the recent case of *State ex rel. Patchett v. Superior Court*, 60 Wn. (2d) 784, 375 P. (2d) 747 (1962), of

which neither the trial court nor counsel in the instant case was aware, we held that an order awarding property in lieu of homestead, which also ordered the discharge of the personal representative upon a final settlement of the estate, is ineffective to achieve that result if the proper statutory procedure (RCW 11.76) requisite to the validity of such an order is not followed. We there quoted as follows from *Stell Co. v. Smith,* 16 Wn. (2d) 388, 133 P. (2d) 811 (1943), wherein the estate was closed and the executrix was discharged in a set aside order:

"'The executrix was discharged and the estate closed without a final settlement or order of court approving such final settlement.

"'. . .

"'. . . That order [the set aside order], it is true, was final within its limited field of setting aside property to the widow in lieu of homestead, *but it is not a valid order approving the executrix's final report and petition for distribution and discharge of the executrix and surety from further responsibility in the estate, as there was an utter disregard of the statutory procedure prerequisite to the validity of such an order. . . .*'" (Italics ours.)

In *State ex rel. Patchett v. Superior Court,* we said the *Stell Co. v. Smith* case only concerned the valid closing of an estate, but the reasoning applied to the procedure essential to the discharge of a personal representative at the time of closing an estate. As in *State ex rel. Patchett v. Superior Court,* the probate court in the instant case acted outside its jurisdiction in failing to comply with the statutory procedure for discharging a personal representative at the time of the final settlement of an estate. RCW 11.76. The order was void as to the discharge of the administratrix, Effie Woods. It was final only with respect to the property awarded. Therefore, she continued to be the party plaintiff in the Goodson action and she properly commenced the action against General Motors Corporation. The order substituting the plaintiff Gladys Gray was proper, having been made within one year after the death of Effie Woods.

The defendants contend, however, that the death of Effie Woods resulted in abatement of the actions since she was

the only person alive at the death of Eugene Woods who qualified as a beneficiary of the actions under RCW 4.20.020. It is argued that the benefit of the wrongful death action does not survive to the estate of a beneficiary who dies subsequent to the death of the injured deceased. If this proposition is correct, the judgments of the trial court must be affirmed even though they were based upon an erroneous theory.

The question is one of first impression in this state. Since the right of action for wrongful death was created by statute, the basic issue involved is whether the legislature intended that the benefit of the action pass to the estate of a deceased beneficiary. In resolving this issue, we are mindful that the statute, being remedial in nature, is to be liberally construed. *Johnson v. Ottomeier*, 45 Wn. (2d) 419, 275 P. (2d) 723 (1954); *Cook v. Rafferty*, 200 Wash. 234, 93 P. (2d) 376 (1939).

In discerning the intention of the legislature with regard to this matter we deem it important to reflect upon the nature of the statutory wrongful death action and the purpose for which it was enacted.

According to the common law, no civil action could be maintained by a surviving spouse, child or other close relative of the deceased person against one who wrongfully caused the death. This rule is thought to be derived from the maxim of tort law *actio personalis moritur cum persona* (a personal action dies with the person). Logically, however, the maxim provides no support for the above rule; the rule at common law that a tort action for personal injury could not survive to the estate of the injured deceased person is not a logical reason for denial of an action to a living person who suffers pecuniarily from the wrongful death. See Tiffany, Death by Wrongful Act § 15 (2d ed. 1913). Some early authorities advanced public policy reasons for denying a common law action for wrongful death, but, these have not withstood critical analysis. Tiffany, *supra*, § 16.

It was with the spirit of rejecting the bases of the common law rule and its harsh effects that the wrongful death statutes were enacted, beginning with Lord Camp-

bell's Act in England in 1846. Such statutes, in some form or another, have been enacted in all states and also by Congress in certain areas of employment. We are here only concerned with the type of wrongful death statute which creates in the beneficiary a new and original cause of action upon the wrongful death. Our statute is of this class. *Upchurch v. Hubbard,* 29 Wn. (2d) 559, 188 P. (2d) 82 (1947).

In view of the common law rule and the reasons therefor, the concept which underlies this legislation plainly is that a person may legally sustain damages when one, with whom a certain relationship existed, is wrongfully killed. Although this concept has been given life only through statute and only those persons designated as beneficiaries in the statute may legally sustain injury to a pecuniary interest due to the wrongful death, the nature of the statutory interest created lends to the determination of whether the interest, once it has accrued into a right of action, survives.

The issue was presented to the United States Supreme Court in *Van Beeck v. Sabine Towing Co.,* 300 U. S. 342, 81 L. Ed. 685, 57 S. Ct. 452 (1937), which construed the wrongful death provisions of the Federal Employers' Liability Act. The provisions of that act are substantially similar to Washington's Wrongful Death Act and also do not contain any express words with regard to whether the action abates upon a beneficiary's death. In an opinion by Mr. Justice Cardozo, the court stated:

"Viewing the cause of action as one to compensate a mother for the pecuniary loss caused to her by the negligent killing of her son, we think the mother's death does not abate the suit, but that the administrator may continue it, for the recovery of her loss up to the moment of her death, though not for anything thereafter, the damages when collected to be paid to her estate. Such is the rule in many of the state courts in which like statutes are in force. It is the rule in New York, in Pennsylvania, in New Jersey, in Oklahoma, in Georgia, in Kentucky, in North Carolina, and under statutes somewhat different in Connecticut and Massachusetts. It is also the rule in the lower federal courts, applying the statute of Illinois as well as the Act of Congress

in respect of death upon the high seas. These cases take the ground that 'the damages awarded for the negligent act are such as result to the property rights of the person or persons for whose benefit the cause of action was created.' . . . When we remember that under the death statutes an independent cause of action is created in favor of the beneficiaries for their pecuniary damages, the conclusion is not difficult that the cause of action once accrued is not divested or extinguished by the death of one or more of the beneficiaries thereafter, but survives, like a cause of action for injury to a property right or interest, to the extent that the estate of the deceased beneficiary is proved to be impaired. To that extent, if no farther, a new property right or interest, or one analogous thereto, has been brought into being through legislative action. . . .

"  .  .  .

"Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day."

▆ The defendants attempt to distinguish the *Van Beeck* case by interpreting RCW 4.20.010 and RCW 4.20.020 to mean that the cause of action for wrongful death "vests" in the personal representative and that, until recovery of a judgment or its equivalent, nothing vests in the beneficiaries which can survive their death. Such an interpretation would permit form to rule over substance and would subvert the very purpose of the statutes' intended benefit. The right of action "vests" in the personal representative only in a nominal capacity since the right is to be asserted in favor of the members of the class of beneficiaries. Clearly, at the time of the wrongful death when the cause

of action accrues, the beneficiaries are then "vested" with the right to the benefit of the cause of action.

The personal representative is merely a statutory agent or trustee acting in favor of the class designated in the statute, with no benefits flowing to the estate of the injured deceased. In *Maciejczak v. Bartell,* 187 Wash. 113, 60 P. (2d) 31 (1936), we said:

" . . . Actions brought under the foregoing statutes are strictly statutory actions, which may be prosecuted for the benefit of certain classes of persons therein named. In this case, the action is prosecuted for the benefit of the widow. . . . Under chapter 129, Laws of 1909, p. 425, the heirs or personal representatives of one whose death was caused by the wrongful act or neglect of another might maintain an action for damages against the person causing the death. By § 183, *supra* [now codified as RCW 4.20.010], the action may be brought only by the personal representative of the deceased, § 183-1 providing that the action shall be for the benefit of the wife and certain other specified classes of persons. Under no circumstances does the estate of the decedent benefit by the action. Anything realized therefrom goes to the beneficiaries. A cause of action for wrongful death is not one which ever belonged to the decedent. The cause of action does not arise until his death, and is purely statutory."

The defendants rely on *Reutenik v. Gibson Packing Co.,* 132 Wash. 108, 231 Pac. 773, 37 A. L. R. 830 (1924). We there said the right of action vests in the personal representative, but we did not say that the right to the benefit of the action does not vest in the beneficiary at the time of the wrongful death.

Our statutes, in no substantial manner differ from the statutes before the court in the *Van Beeck* case. In both, the personal representative of the injured deceased must maintain the action and in both, damages collected are for the benefit of certain designated kin. The defendants assert a distinction where there is none.

Many state court decisions have dealt with the issue of survival of a wrongful death action. The cases are fairly divided for and against survival and many are collected in an annotation in 43 A. L. R. (2d) 1291 (1955). Some

decisions are not in point because they turn upon language peculiar to the statute before the court. Others are not helpful because of the scant or vague reasons advanced in favor of the conclusion reached. However, the case of *Danis v. New York Central R. Co.*, 160 Ohio St. 474, 117 N. E. (2d) 39, 43 A. L. R. (2d) 1286 (1954) deserves mention. In ruling that a wrongful death action abates upon the subsequent death of the beneficiary, the court stated:

"The writer of this opinion sympathizes with the broader and more liberal rule laid down in the *Van Beeck case* and the cases which are in agreement with it, and if the question were one of first impression in this court he would in all probability place himself on that side. However, the *Doyle case* [81 Ohio St., 184, 90 N.E. 165, 135 Am. St. Rep. 775 (1909)], which takes an opposite view, is not without logic in light of the wording of our statute and is supported by decisions in jurisdictions outside Ohio. Moreover, that case represents the interpretation of the Ohio statute by a unanimous decision of this court and has remained as the law of this state for more than 44 years. In all that time the General Assembly has not seen fit to change the statute in any material respect."

█ We are not here handicapped by the rule of stare decisis as was the Ohio court. From our examination of the authorities, we are convinced that the *Van Beeck* case and the state decisions which apply the same reasoning are of the sounder and better view. Since the beneficiary is given the benefit of a cause of action for the wrongful killing of another human being, the statutorily created interest is comparable to a property right. At common law, rights of action with respect to property survive to the personal representative of the deceased and we find no indication that the legislature intended to change this result with regard to a right of action for wrongful death.

To hold that the action does not survive the subsequent death of a beneficiary would defeat, in part, the legislature's intention to enact into law the concept that one does have, within the statutory limits, a property interest in another's life.

Furthermore, we do not think that the legislature intended the maintenance of the action to depend upon the fortuitous event of the beneficiary's death, or the existence of someone of the class at the time of recovery. The words of the Kentucky court in *Sharp's Adm'r v. Sharp's Adm'r,* 284 S. W. (2d) 673 (Ky.) (1955) are appropriate:

"There are endless practical difficulties and uncertainties which would arise if we decided that the beneficiary under the statute could not be ascertained until the time of 'recovery'. In the first place, would the time of recovery be the date of a judgment, or an agreed settlement, or the time the damages were actually paid? Secondly, we would be forced to create some strange type of floating cause of action vested in the deceased's administrator with an unknown and unascertainable beneficiary. Yet we have recognized that the administrator acts as the representative of some specific beneficiary designated by the statute. [Case omitted] Thirdly, the administrator, by his control of the claim, would be in a position to determine arbitrarily in many instances who would be the beneficiary. Fourthly, since the administrator would represent no one in particular prior to the date of the recovery, to whom would he be responsible for enforcement of the claim, if anyone? Other almost insurmountable problems are readily apparent."

Also, it is abundantly clear that the statute was not solely enacted to provide a means of support during life for the beneficiary due to the loss of a breadwinner. Other factors are important in determining damages, *e.g.,* companionship and society, services, care and attention, protection and advice. The action may be maintained even where the beneficiary was not dependent upon the injured deceased for support. See Comment, *Damages in Washington Wrongful Death Actions,* 35 Wash. L. Rev. 441 (1960).

The defendants contend, however, that the general survival-of-actions statute expressly indicates that the beneficiary's interest in a wrongful death action does not survive. That statute, RCW 4.20.040, reads as follows:

"All other causes of action [*than those enumerated in RCW 4.20.010*] by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal represen-

tatives of the latter. Where the cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives." (Italics ours.)

We have consistently held that this section does not define what causes of action survive, but only directs in whose name the prosecution of surviving causes may be brought or continued. *Slauson v. Schwabacher Bros. & Co.*, 4 Wash. 783, 31 Pac. 329 (1892); *Boyd v. Sibold,* 7 Wn. (2d) 279, 109 P. (2d) 535 (1941); *Cooper v. Runnels,* 48 Wn. (2d) 108, 291 P. (2d) 657, 57 A. L. R. (2d) 597 (1955). The bracketed reference to the wrongful death section obviously indicates that the general survival statute is not to control the manner of prosecution of actions for wrongful death, it does not determine whether such actions survive.

■ We hold that once a right of action for wrongful death has accrued, the subsequent death of a beneficiary does not abate the action. The benefit of the right of action survives to the beneficiary's estate. However, the damages recoverable to the estate are necessarily limited to the extent the estate of the deceased beneficiary has been impaired.

The judgments are reversed, and the causes are remanded for new trials consistent with our views expressed in this opinion. The costs will abide the final disposition of the cases.

FINLEY, WEAVER, ROSELLINI, and HAMILTON, JJ., concur.

OTT, C. J. (dissenting)—September 28, 1956, Eugene Robert Woods died as the result of injuries received in an automobile accident. He was survived by his wife, Effie. They had no children, nor did Eugene Woods have either sisters, brothers or parents who survived him. Effie Woods commenced these separate actions for damages against the alleged tort-feasors of her husband. She died while her claims of action were pending. Gladys Gray was substituted as administratrix of the estate of Eugene Robert Woods, deceased, and, as such administratrix, sought to continue the actions. The defendants moved to dismiss both claims

for the reason that they abated upon the death of Effie Woods. From a judgment of dismissal, the administratrix has appealed.

The sole issue on appeal is: Did the statutory claims of Effie Woods, which had not culminated in a judgment during her lifetime, abate upon her death?

RCW 4.20.010 provides in part:

"When the death of a person is caused by the wrongful act, neglect or default of another *his personal representative* may maintain an action for damages against the person causing the death; . . ." (Italics mine.)

RCW 4.20.020 provides in part:

*"Every such action shall be for the benefit of the wife,* husband, child or children of the person whose death shall have been so caused. *If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers,* who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death." (Italics mine.)

RCW 4.20.050 provides:

"No action shall abate by the death, marriage or other disability of the party, or by the transfer of any interest therein, if the cause of action survives or continues; but the court may at any time within one year thereafter, on motion, allow the action to be continued by or against his representatives or successors in interest."

RCW 4.20.010 authorizes the personal representative of the deceased to maintain a wrongful death claim against alleged tort-feasors for the benefit of a limited class of persons. RCW 4.20.020 designates these persons to be the husband or wife of the deceased, or a child or children of the deceased, or, if none of these classes survives, then the parents, sisters or brothers of the deceased.

At the time Effie Woods qualified as the personal representative of the deceased, Eugene Robert Woods, she was the only *living statutory beneficiary* who could receive the benefit of the claims of action, in the event she established liability on the part of the alleged tort-feasors. Therefore, the statutory claims of action by the personal representative

of Eugene Woods abated upon the death of the only beneficiary capable of taking thereunder.

The majority hold that, because Effie Woods survived her husband, she had a vested right in a claim for damages against the alleged tort-feasors of Eugene Robert Woods, deceased, which inured to her statutory heirs.

In my opinion, this determination is without merit for two reasons:

(1) Such a cause of action (if any exists) could be maintained only by the *personal representative of Effie Woods, deceased.* Gladys Gray is the personal representative of Eugene Robert Woods, deceased. Gladys Gray, according to the record before us, has not qualified as the personal representative of Effie Woods; hence, she has no authority to seek damages for Effie Woods' estate.

(2) Effie Woods' claims were, by statute, not a property right, but simply a right to seek a personal benefit. Such personal claims of action abated upon her death. *Marvin v. McCall & McDonald, Inc.,* 57 Wn. (2d) 906, 357 P. (2d) 173 (1960), and case cited.

The judgment of the trial court should be affirmed.

HILL and DONWORTH, JJ., concur with OTT, C. J.