[No. 42858.    En Banc.    May 9, 1974.]

LEONARD L. WOOD, as *Administrator, Petitioner,* v. JOHN S. DUNLOP *et al., Respondents.*

*Critchlow, Williams, Ryals & Schuster,* by *David E. Williams,* for petitioner.

*Willard W. Jones,* for respondents Dunlop.

STAFFORD, J.—A jury returned a verdict for defendants. The central issue is whether, in the absence of a guardian and a court approved settlement, a release and settlement authorized by the personal representative of a deceased's estate constitutes a bar to a subsequent action for wrongful death brought on behalf of the deceased's minor child.

On February 8, 1968, defendant, Dr. Dunlop, performed minor surgery on Jo Ann Wood at defendant Tri-State Memorial Hospital. Instead of using a proper anesthetic, digitalis was accidentally introduced into Mrs. Wood's spinal column causing her death. Mrs. Wood is survived by her husband, Leonard, and her 2-year-old son, the subjects of the instant action.

Three or four weeks after Mrs. Wood's death, the defendant doctor told Mr. Wood the reason for his wife's death. Mr. Wood was informed that an insurance adjuster would contact him. A few days later, Mr. Rector, representing the insurers of both the doctor and the hospital, visited with Mr. Wood and his brother at the latter's home. After acquiring information necessary for evaluation of the potential wrongful death claim, Mr. Rector told Mr. Wood he would do his best to settle the matter as soon as possible. Anxious to leave the Clarkston area, Mr. Wood contacted Mr. Rector about the status of the claim several times during the following week.

On March 26, Mr. Wood and his brother, at their own instance, traveled to Spokane to see Mr. Rector. At that time Mr. Wood was informed that the insurance companies

would settle the matter for $18,000. After a brief discussion with his brother, Mr. Wood decided to accept the offer.[1]

Mr. Wood testified that Mr. Rector told him that before the settlement could be concluded, it would be necessary for him to be appointed "legal guardian and realtor [sic] of the estate" and that he would need a lawyer for that purpose. Since Mr. Wood did not know a lawyer in Clarkston, Mr. Rector suggested one. Mr. Wood talked to the lawyer by telephone and told him "I just had been offered $18,000.00 and I was told I had to be appointed legal guardian of my son."

Subsequently, Mr. Wood was appointed administrator of his deceased wife's estate. No wrongful death action was commenced by him in that capacity, however. Rather, Mr. Rector gave him two drafts—one from Aetna Life and Casualty Company for $7,200, and the other from St. Paul Fire and Marine Insurance Company for $10,800. Each was payable to "Leonard L. Wood, individually and as administrator of the estate of Jo Ann Wood." In exchange for the drafts, Mr. Wood executed a release reciting a consideration of $18,000. It was signed by him, individually, but the endorsements on the two drafts were by Mr. Wood, individually and as administrator of the estate of Jo Ann Wood.

Mr. Wood was not appointed guardian of his minor son although Mr. Rector knew the child was a beneficiary of the wrongful death claim and had originally suggested such

[1]"A. Well, I asked him if they found out how much they were going to pay, and he told me they did, it would be $18,000.00, and I told my brother, Bob, to—they had a drinking fountain there in a large room. I told him to walk over to the drinking fountain. And I told Bob, 'Doesn't seem like to me it is enough,' and Bob told me, he said, 'Well, you are unemployed; we borrowed $20.00 to get over here, so $18,000.00 is better than going to Court, going to trial.'

"So we went back over to Mr. Rector's desk and I told Mr. Rector, I said, 'Well, if I didn't want to accept the $18,000,' I said, 'I would have to hire myself an attorney and would have to take this to Court.'

"Mr. Rector said, 'Yes, that is true.'

"My brother Bob said, 'And that could take some time.'

"Mr. Rector said, 'That is right.'

"So I told Mr. Rector, I said, 'That is fine; can you give me the check now?' "

an appointment would be necessary. All of the funds were paid to Mr. Wood and no allocation was made for the child. As it turned out, within two days of receiving the money, Mr. Wood paid off his past due rent, paid the rent of his brother's family, purchased a large amount of clothing and toys for his son and for his brother's children, bought some clothing for himself as well as for his brother, gave some money to his sister-in-law to buy "whatever she needed" and told his brother "if he wanted anything to go ahead and get it," purchased quite a large quantity of groceries for his brother's family, had his brother's automobile put in good running shape and equipped with new tires, purchased a used TV set, and purchased a 2-year-old Chrysler Imperial for $4,200. Thereafter, he left for California and Nevada to visit relatives.

On May 6, 1970, Mr. Wood, acting as administrator of the decedent's estate, brought this action against defendants for wrongful death.[2] Defendants denied liability and alleged, as an affirmative defense, that the claim had been settled and released by Mr. Wood, individually and as administrator of his deceased wife's estate. A jury trial was held to determine the validity of the release. A defense verdict was affirmed by the Court of Appeals, *Wood v. Dunlop*, 8 Wn. App. 957, 510 P.2d 260 (1973). We granted a petition for review on the narrow issue of whether, in the absence of a guardian and a court approved settlement, a release and settlement authorized by the personal representative of a deceased's estate constitutes a bar to a subsequent action for wrongful death brought on behalf of the deceased's minor child by the personal representative.

Mr. Wood, as administrator, argues that SPR 98.16W, RCW 11.48.130 and 11.76.080 are determinative of the issue and require reversal of the defense verdict. We do not agree. Neither RCW 11.48.130 nor 11.76.080 are applicable to the settlement of wrongful death claims. They are

---

[2]The original complaint was filed solely on behalf of the son Leonard L. Wood II; however, an amended complaint, filed July 21, 1970, sought damages for both father and son.

concerned either with claims against an *estate* or claims owing an *estate*. A wrongful death action is neither. The benefit of a wrongful death claim does not flow to the estate of the deceased. *Gray v. Goodson,* 61 Wn.2d 319, 378 P.2d 413 (1963). SPR 98.16W is equally inapplicable. First, it is operative only in cases "where the court is *requested* to approve a settlement involving the claim of a . . . minor." (Italics ours.) No request was made for court approval in the instant case. Second, the rule is limited to settlements "involving the *claim of a . . . minor.*" (Italics ours.) In this case the minor possessed no *claim* or cause of action *personal to himself.* Actions for wrongful death are strictly statutory and must be instituted by the *personal representative* of the deceased, RCW 4.20.010, for the *benefit* of the wife, husband or *child* of the deceased. RCW 4.20.020. In short it is the personal representative, not the child, who possesses the claim (as a statutory agent or trustee), who is the "nominal" party to the action, and who must maintain it on *behalf of the minor. Gray v. Goodson, supra.*

On the other hand, the defendants argue that *Hansen v. Stimson Mill Co.,* 195 Wash. 621, 81 P.2d 855 (1938), is determinative of the power of personal representatives to settle wrongful death claims. In *Stimson Mill* the personal representative of Mr. Lundberg, the deceased, instituted a wrongful death action against the mill on behalf of the widow and minor child. The court entered a stipulated judgment by way of settlement. The settlement was made by the personal representative without a previous order, without the appointment of a guardian ad litem for the minor child, and without segregation of the amount that should be received by the respective beneficiaries. We dismissed a subsequent action against the mill, brought on behalf of the minor by a guardian, holding that a wrongful death action may be maintained only by the personal representative of the deceased. We there observed that the personal representative is the only party to the action and as

such possessed the power to compromise claims without the consent of the beneficiaries and without court approval.

However, *Stimson Mill* must be read in the light of our more recent pronouncement in *Gray v. Goodson, supra.* As we pointed out in *Goodson,* the wrongful death statute creates in the beneficiary a new and original cause of action upon the wrongful death of one to whom he has the necessary statutory relationship. This right, however, can be exercised only in the specific manner authorized by statute, *i.e.,* by the personal representative of the deceased. *See also* *Upchurch v. Hubbard,* 29 Wn.2d 559, 188 P.2d 82 (1947). In *Goodson* we stressed that it would be incorrect to say that a cause of action for wrongful death "vests" in the personal representative, to the exclusion of the beneficiaries, until recovery of a judgment or its equivalent. Rather, "[t]he right of action 'vests' in the personal representative *only in a nominal capacity* since the right is to be asserted in favor of the . . . beneficiaries." *Gray v. Goodson, supra* at 326. Contrary to the impression apparently gleaned from *Stimson Mill* by defendants, we held in *Goodson,* at pages 326-27, that "at the time of the wrongful death when the cause of action accrues, the beneficiaries are then .'vested' with the right to the benefit of the cause of action." This statutorily created interest, we said at page 328, "is comparable to a property right." *See also* 2 L. Orland, Wash. Prac., Trial Practice § 561, at 602 (3d. 1972).

In *Stimson Mill* the court focused its attention on the fact that the personal representative is the only party who may maintain an action for wrongful death. In so doing, it ignored those for whose benefit the statute was drafted—the specifically designated survivors. They are the ones for whom the judgment or settlement must serve as consolation for the loss they have suffered.

Several states, either by statute or by court rule, require court approval of wrongful death settlements.[3] In

---

[3]Ohio, O.R.C. 2125.02; Oregon, O.R.S. 30.070; Pennsylvania, Rules of Civil Procedure, Rule 2206.

other states such approval is required by court decision.[4] Such a requirement does not impose an undue burden on the parties seeking the settlement and release, yet, it serves a legitimate state interest by protecting the welfare of the child. Requiring court approval and appointment of a guardian for the child will help protect the minor's "vested" interest in the benefits of the claim in two ways. First, appointment of an independent guardian, concerned only with the interests of the child, will insure that settlements will more adequately compensate the minor for the loss sustained. Second, appointment of a guardian and a requirement of court approval will serve to guarantee that the minor will actually receive the portion of a settlement to which he is entitled.

The Court of Appeals, relying on our decisions in *Stimson Mill* and *In re Estate of Perrigo*, 47 Wn.2d 232, 287 P.2d 137 (1955), found no error in the trial court's ruling that the documents signed by Mr. Wood, as administrator of the estate, constituted a release which bound his minor son, as a matter of law. To the extent that these cases authorize a personal representative to settle and release a wrongful death action on behalf of a minor beneficiary thereof, without appointment of a guardian and without court approval, they are overruled. Henceforth, such a release will not bind a minor beneficiary unless an independent guardian has been appointed for him and a court has approved of the settlement. The judgment of dismissal is reversed as to the minor, Leonard L. Wood II.

The balance of Mr. Wood's assignments of error deal with the validity of the documents said to constitute a release of his individual action for wrongful death. We affirm the dismissal of his action for the reasons stated by the Court of Appeals.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

---

[4] *Rowe v. Fair*, 157 Miss. 326, 128 So. 87 (1930); *In re Estate of Milliman*, 101 Ariz. 54, 415 P.2d 877 (1966).

FINLEY, J. (concurring)—I have signed and concur in the majority opinion, but will add the following comment.

It seems to me our cases cited by the majority construing the "Wrongful Death Statute" have been overwritten and contain a lot of unnecessary legal legerdemain relative to the statute, rights and benefits and the institution of law-suits thereunder. I think it is time for the court to simply say: (a) that the statute creates rights or benefits for the family survivors of a wrongful death decedent; (b) that resultant claims for wrongful death loss, *i.e.,* damages, are personal and distinct as to each individual survivor; (c) that such claims or causes of action are to be asserted in court pursuant to the wrongful death statute by a nominal plaintiff, *i.e.,* personal representative, duly selected and appointed as provided by law; (d) that the personal representative must act in a quasi-fiduciary capacity for each survivor regarding their separate and individual interests or claims; (e) that the estate of the deceased as such has no interest, claim or function under the wrongful death statute.

On the basis of the foregoing, as well as the analysis and reasoning of the majority opinion, I concur.

WRIGHT and BRACHTENBACH, JJ., concur with FINLEY, J.