
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JUDY R. DEGGS, as personal
representative for the estate of ROY
GORDON SUNDBERG,

Appellant,

v.

ASBESTOS CORPORATION LIMITED;
ASTENJOHNSON, INC.; CBS
CORPORATION (FKA VIACOM INC., FKA
WESTINGHOUSE ELECTRIC
CORPORATION); INGERSOLL-RAND
COMPANY,

Respondents,

BARTELLS ASBESTOS SETTLEMENT
TRUST; GASKET COMPANY; GENERAL
REFRACTORIES COMPANY; JOHN
CRANE, INC.; METROPOLITAN LIFE
INSURANCE COMPANY, and FIRST
DOE through ONE HUNDREDTH DOE,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71297-7-I
(consolidated with
No. 71550-0-I)

DIVISION ONE

PUBLISHED OPINION

FILED: June 22, 2015

APPELWICK, J. — Deggs, as personal representative for her father's estate, appeals

the dismissal on summary judgment of her wrongful death action. In 1999 her father

successfully sued several defendants for injuries related to asbestos exposure. In 2012,

two years after her father passed away, Deggs filed a wrongful death action against one

of the same defendants from the 1999 lawsuit and several new defendants. Wrongful death claims derive from the wrongful act and do not accrue absent a valid subsisting cause of action in the decedent at the time of death. Deggs's father had no valid subsisting cause of action at the time of his death. We affirm.

FACTS

Roy Sundberg was exposed to asbestos while working for various employers from 1942 to 1989. Sundberg was diagnosed with colon cancer and lymphoma on July 24, 1998, pleural disease on August 31, 1999, and asbestosis on February 21, 2000.

On September 20, 1999, Sundberg filed a lawsuit against about 40 defendants, including Asbestos Corporation Limited (ACL). Sundberg sought relief in the form of general damages, medical and related expenses, pain and suffering, loss of earnings, loss of wages and future earning potential, emotional distress, and cost of the lawsuit. On April 18, 2001, Sundberg's wife, Betty Sundberg, asserted a claim for loss of consortium in the amended complaint.

The 1999 lawsuit was tried to verdict in 2001. The jury awarded $451,900 in economic damages, $700,000 in noneconomic damages, and $360,000 in loss of consortium damages.

In December 2010, Sundberg died of lymphoma. On July 3, 2012, the personal representative of Sundberg's estate, his daughter, Judy Deggs, filed a second asbestos-related lawsuit against ACL and several new defendants, including respondents Ingersoll-Rand Company, AstenJohnson Inc., and CBS Corporation. The complaint asserted both a survival action and a wrongful death action. The 2012 lawsuit alleged liability against

2

the defendants based on much of the same asbestos exposure as the 1999 lawsuit. The complaint sought the same relief as the 1999 lawsuit but included funeral expenses.

On March 12, 2013, respondent AstenJohnson moved for summary judgment. AstenJohnson argued that summary judgment was proper, because both the survival action and the wrongful death action were barred by the expiration of the statute of limitations on Sundberg's underlying claims. The trial court granted AstenJohnson's motion for summary judgment. The court noted that the statute of limitations had run on any of Sundberg's remaining personal injury claims. It thus reasoned that Deggs's claims were barred, because there was no remaining cause of action that Sundberg could have brought against AstenJohnson before he died.

In reaching its conclusion, the trial court weighed the competing interests of compensating the qualifying survivors and the important policy reasons behind finality and statutes of limitation. It ultimately reasoned that Sundberg consciously let the statute of limitations run out when he did not sue AstenJohnson in his 1999 personal injury lawsuit. It opined that, because there was no cause of action that Sundberg could have brought against AstenJohnson at the time of his death, there was no cause of action that his personal representative could bring because of Sundberg's death. The trial court then granted summary judgment through a separate order for the remaining defendants—ACL, Ingersoll-Rand Company, and CBS Corporation—because Deggs's claims against them were similarly barred.

Deggs appeals the summary judgment dismissals of her wrongful death claim, but not the survival claim, as to all respondents.

3

DISCUSSION

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). An appellate court may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record. Davies v. Holy Family Hosp., 144 Wn. App. 483, 491, 183 P.3d 283 (2008).

The statute of limitations for a personal injury action in Washington is three years. RCW 4.16.080(2). Sundberg passed away over 11 years after he filed his original personal injury complaint without bringing any additional lawsuits related to his injuries. Deggs asserts that Sundberg's actions and inaction during his lifetime—the 1999 lawsuit against ACL and his failure to pursue a personal injury action against the remaining respondents within the statute of limitations period—cannot affect the viability of her wrongful death action. She contends this is so, because the wrongful death action did not accrue until Sundberg passed away.

RCW 4.20.010 is the wrongful death statute:

When the death of a person is caused by the wrongful act, neglect or default of another his or her personal representative may maintain an action for damages against the person causing the death.

The issue here is whether the expiration of the statute of limitations for an individual's personal injury claims or a judgment or settlement on those same claims

4

during his lifetime can preempt the accrual of his personal representative's wrongful death claim. The wrongful death statute is silent on this issue.

Deggs does not dispute that Sundberg won a favorable judgment against ACL in 1999. Nor does she dispute that the statute of limitations for Sundberg's personal injury claims as to the respondents expired prior to Sundberg's death. Because Sundberg pursued his personal injury claims against ACL to judgment, he would have been unable to sue ACL again based on the same cause of action during his lifetime. See Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995) (stating that res judicata prevents litigants from relitigating claims and issues that were litigated, or might have been litigated, in a prior action). To the extent there were any remaining causes of action Sundberg could have brought against ACL, like any potential personal injury claims against AstenJohnson, Ingersoll-Rand, and CBS, they would have been barred by the three year statute of limitations. See RCW 4.16.080(2).

Deggs claims that a cause of action for wrongful death accrued at the time Sundberg died, and that it is wholly unaffected by the resolution of Sundberg's underlying personal injury claims. However, Deggs's position is inconsistent with case law. In Washington, a decedent's inaction as to his claims during his lifetime can preempt the accrual of a personal representative's wrongful death cause of action. See, e.g., Grant v. Fisher Flouring Mills Co., 181 Wash. 576, 581, 44 P.2d 193 (1935); Calhoun v. Wash. Veneer Co., 170 Wash. 152, 160, 15 P.2d 943 (1932). The trial court relied on Grant in

dismissing Deggs's claims on summary judgment. The respondents on appeal rely heavily on Calhoun and Johnson v. Ottomeier, 45 Wn.2d 419, 275 P.2d 723 (1954).[1]

In Calhoun, the decedent husband, worked for a manufacturing plant and was exposed to harmful fumes from April 1926 to November 1928. 170 Wash. at 153. In November 1928 he was diagnosed with bisulphide poisoning. Id. Calhoun originally brought an action in September 1931 claiming that his poisoning was a result of his employer's negligence. Id. at 153-54. Calhoun died on October 17, 1931, while his lawsuit was pending. Id. at 154. Calhoun's wife, Cora, as executrix of the estate filed an amended complaint in December and added a claim for wrongful death. Id. The trial court dismissed Cora's complaint. Id. at 155. On appeal, the court considered whether the statute of limitations barred Cora's wrongful death claim. Id.

A common law cause of action against the employer was precluded by the workmen's compensation act, Rem. Comp. Stat., § 7673. 170 Wash. at 158-59. The court noted that under the laws at the time, Calhoun himself would have been able to recover under only the factory act, Rem. Comp. Stat. § 7659, which provided a cause of action with a three year statute of limitations. 170 Wash. at 159. The court then determined that, based on Calhoun's injuries and facts as pleaded in the amended complaint, any injuries received from violation of the statute culminated and accrued

---

[1] Calhoun and Grant examine the interaction between the statute of limitations on a decedent's claim and a personal representative's wrongful death claim based on an older version of the wrongful death statute. 170 Wash. at 159-60; 181 Wash. at 578, 580. Similarly, Johnson examines an older version of the wrongful death statute. 45 Wn.2d at 421. At the time these cases were decided, the wrongful death statute was very similar to RCW 4.20.010. Compare REM. COMP. STAT. § 183, at 248, and REM. REV. STAT. § 183, with RCW 4.20.010. Except for the addition of gender neutral language and a comma in 2011, RCW 4.20.010 is identical. See LAWS OF 2011, ch. 336, § 89.

about the middle of May 1928. Id. Thus, the statute of limitations on his factory act claim expired in May 1931. Id. 159-60. Because Calhoun did not file his complaint against his employer until September 1931, his claims under the factory act were barred by the three year statute of limitations. Id. at 159.

The court acknowledged that the cause of action for wrongful death had not accrued at the time the original complaint was filed.[2] Id. at 160. But, importantly, the court stated that Cora would have been entitled to amend the complaint to bring a claim for damages for wrongful death under Rem. Comp. Stat. § 183-1 if the action had commenced within the statute of limitations period set by Calhoun's factory act claim. 170 Wash. at 160. Because both the original and the amended complaint were filed well after the expiration of the statute of limitations on Calhoun's underlying factory act claims, Cora's wrongful death claim was barred. Id.

Calhoun undermines Deggs's argument that a personal representative's claims for wrongful death cannot be affected by the expiration of the statute of limitations on the decedent's underlying personal injury claims. This concept was reinforced and clarified in Grant. See, 181 Wash. at 581.

In Grant, a wife added a wrongful death claim to her husband's complaint while her husband's claim was pending, but after he died. Id. at 576-77. Grant started working as a miller in a flour mill in June 1926. Id. at 576. He continued working at the mill until July 26, 1930, when he stopped working because of illness. Id. at 577. On August 19,

---

[2] There is language in Calhoun susceptible of being construed to mean that a wrongful death cause of action accrues at the time of injury to the deceased rather than at the time of death. 170 Wash. at 160. But, the Grant court later clarified that the facts of Calhoun combined with other precedent dictate that Calhoun should not be read that way. 181 Wash. at 581-82.

7

1932, he sued his employer alleging that his illness was caused from exposure to nitric acid and chlorine gas fumes while on the job. Id. As in Calhoun, Grant based his action on the factory act. Id. at 579. Grant died on August 17, 1933, while his action was pending. Id. at 577. Grant's wife, Dorothy, was substituted as plaintiff in Grant's lawsuit. Id. Subsequently, Dorothy filed an amended complaint for both a survival action and a wrongful death action under Rem. Rev. Stat. § 183. Id.

After making the determination that Grant brought his action for personal injuries within the time prescribed by the three year statute of limitations, the court discussed the interaction between the accrual of a wrongful death action and Grant's claims:

> The action for wrongful death, under Rem. Rev. Stat. § 183 [P. C. § 8259], is a distinct and separate action from the survival action, under id. § 194 [P. C. § 8275]. In accord with the great weight of authority, this court has held that the action accrues at the time of death, and that the statute of limitations then begins to run.
>
> The rule, however, is subject to a well recognized limitation, namely, at the time of death there must be a subsisting cause of action in the deceased. Under this limitation, it has been held that the action for wrongful death is extinguished by an effective release executed by the deceased in his lifetime, by a judgment in his favor rendered during his lifetime; by the failure of the deceased to bring an action for injuries within the period of limitation.

Id. at 580-81 (emphasis added) (alterations in original) (some citations omitted). The Grant court then placed Calhoun in the category of cases in which a failure of the deceased to bring an action within the statute of limitations period extinguishes a cause of action for wrongful death. Id. at 581. In summarizing the decision in Calhoun, the

8

Grant court said, "Obviously, at the time of [Calhoun's] death there was no valid action subsisting in his favor, because the statute of limitations had run against it."[3] Id. at 582.

In allowing Dorothy to maintain a wrongful death action, the Grant court distinguished the result in Calhoun. Id. It reasoned that because Grant brought his action for personal injuries within the time prescribed by the statute of limitations, even though he died more than three years after his cause of action accrued, he left a valid subsisting cause of action against his employer. Id. It concluded that under the circumstances— Grant did not release his claims against his employer during his lifetime and Dorothy brought her wrongful death action from within three years from Grant's death—there was no question that Dorothy's wrongful death action could be maintained. Id. In so doing, the Grant court explicitly stated that a decedent's inaction or action during his lifetime could preempt future wrongful death claims. See id. at 581.

Deggs attempts to distinguish Grant and its reliance on Calhoun, by focusing on the fact that it is "in the context of a workmen's compensation claim" and a long-since repealed statute. The Calhoun court properly noted that a common law cause of action against the employer was precluded by the workmen's compensation act, Rem. Comp. Stat., § 7673. Calhoun, 170 Wash. at 158-59. But, that determination was not dispositive of Grant, because the factory act provided a basis for Grant's underlying substantive tort

---

[3] The Grant court said that Calhoun fell squarely within a U.S. Supreme Court's decision, Flynn v. New York, N.H. & H.R. Co, 283 U.S. 53, 51 S. Ct. 357, 75 L. Ed. 837 (1931). 181 Wash. at 582. In Flynn, the decedent husband suffered an injury at work on December 4, 1923, and it caused his death on September 1, 1928. Id. at 55. The court opined that because the statute of limitations for Flynn's claim was two years, that it was obviously barred. Id. at 56. The employer argued that the widow's claims were distinct. Id. But, the court ultimately concluded that although her cause of action was not strictly representative of Flynn's claims, it was derivative and dependent upon the continuance of a right in the injured employee at the time of his death. Id.

9

claim. 181 Wash. at 579. And, like in Calhoun, the substantive provisions of the factory act itself did not preclude a wrongful death claim and had no bearing on the Grant court's decision. Id. at 580. The statute of limitations applicable to Grant's factory act claim was dispositive. Id. at 579-80.

Johnson v. Ottomeier, a more recent Washington Supreme Court decision, involves a limitation on a wrongful death claim in the context of a disability to bringing suit, rather than a limitation based on the decedent's actions or inaction during his lifetime. 45 Wn.2d at 421. Deggs argues that case stands for the proposition that a personal representative's wrongful death claim can accrue and persist even without a viable underlying claim in the decedent at the time of death.

In Johnson, a husband, murdered his wife, Anna, and then committed suicide. 45 Wn.2d at 420. The issue was whether the wife's personal representative could bring a wrongful death action against the husband's estate for the benefit of their remaining children. Id. But, at the time, the law prevented a wife from suing her husband for a tort committed against her. Id. at 424. The Johnson court held that Anna's inability to sue was a disability personal to her. Id. It concluded that once she died, the disability was lifted and the underlying cause of action for wrongful death was no longer barred. Id.

The Johnson court explicitly distinguished itself from Calhoun and Grant. See id. at 422-23. The court cited to those cases and said that there are situations in which, after receiving the injuries which later resulted in death, the decedent pursued a course of conduct which makes it inequitable to recognize a cause of action for wrongful death. Id. Then, it framed the question before it as a different question, about whether a personal disability in the decedent could be a defense to wrongful death. Id. at 423.

10

Contrary to Deggs's assertion, Johnson does not stand for the broad proposition that a wrongful death cause of action can persist notwithstanding the lack of a viable underlying claim in the decedent at the time of death. In Johnson, it was not that Anna's claims against her husband were extinguished prior to death by judgment, settlement, waiver, statute of limitations, or other bar. Id. Instead, a disability personal to her would have prevented her from bringing suit on the claims during her lifetime. Id. That disability was removed at the moment of Anna's death and did not transfer to her personal representative. Id. at 424. Thus, she left a viable subsisting cause of action and the cause of action for wrongful death became available to her personal representative. See id. Here, unlike in Johnson, Deggs's claims were not affected by a personal disability. Rather, they were completely extinguished by the expiration of the statute of limitations on the underlying tortious conduct or by Sundberg's previous lawsuit. They had no chance of revival upon Sundberg's death.

Deggs argues that notwithstanding the rule established in Grant and Calhoun and reiterated in Johnson, a decedent's actions or inaction during his lifetime should have no impact on a wrongful death claim. She contends this is so, because unlike a survival action, a wrongful death cause of action is a new and distinct action solely for the benefit of a decedent's heirs. Deggs claims that because Washington courts have repeatedly held that the wrongful death statute creates a new cause of action, the cause of action could not be derivative of the decedent's ability to sue, but is instead derivative of the injury to the claimant—here, death. Consequently, she contends that case law interpreting a wrongful death action as derivative is inapposite.

Deggs is correct that a wrongful death action and a survival action are distinct causes of action. See Estate of Otani v. Broudy, 151 Wn.2d 750, 755, 762, 92 P.3d 192 (2004). The survival statutes[4] do not create new causes of action for statutorily named beneficiaries, but instead preserve the decedent's causes of action for injuries suffered prior to death. Id. at 755, 762. By contrast, the wrongful death statute governs postdeath damages and allows the personal representative of the decedent to sue on behalf of statutory beneficiaries for their own losses, not the decedent's losses. Id. at 755. But, the different nature of the causes of action does not mean that a wrongful death cause of action cannot be derivative in any sense of the word. In Johnson the court highlighted that a wrongful death action is "derivative":

> Not having as its basis a survival statute, the action for wrongful death is derivative only in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased.

45 Wn.2d at 423-24. This is consistent with the results in Calhoun (no wrongful death claim available when the decedent had no subsisting claim at death) and Grant (a wrongful death claim properly brought where there was a valid subsisting claim in the decedent at death). 170 Wash. at 160; 181 Wash. at 582. The fact that the survival action and wrongful death action are distinct actions does not disconnect wrongful death actions from the underlying wrongful act against the decedent. It is that wrongful act from which the wrongful death claims spring. It is that wrongful act for which there must be a

---

[4] There are two survival states in Washington—RCW 4.20.046, the general survival statute, and RCW 4.20.060, the special survival statute. Otani, 151 Wn.2d at 755-56. RCW 4.20.046 preserves all causes of action that a decedent could have brought if he or she survived. Id. Alternatively, the special survival statute, RCW 4.20.060, is limited to personal injury causes of action that result in death. Id. at 756.

valid subsisting claim in the decedent at death in order for the statutory beneficiaries' wrongful death claims to accrue.

Next, Deggs argues that the case law in Washington is outdated. She advocates we abandon the holdings in Calhoun and Grant. Deggs alternatively argues that the question before us is currently an open question in Washington and urges us to consider and adopt the law in other states.

Deggs references a recent federal remand order which describes Calhoun, Grant, and Johnson as outdated[5] and which relies on White v. Johns-Mansville Corp., 103 Wn.2d 344, 347, 693 P.2d 687 (1985) to conclude that the issue before us is an "open question" in Washington State. See Barabin v. AstenJohnson, Inc., 2014 WL 2938457, at *3 (W.D. Wash.) (court order). Specifically, the White court stated:

> [W]e note we are not faced with, nor do we decide, a case in which the deceased is alleged by the defendant to have known the cause of the disease which subsequently caused his death. In that case there is a question as to whether the wrongful death action of the deceased's representative "accrued" at the time of the decedent's death, when the decedent first discovered or should have discovered the injury, or when the claimant first discovered or should have discovered the cause of death.

103 Wn.2d at 347. The issue in White was whether the wrongful death cause of action accrued at the time of death or if it accrued later—at the time the decedent's wife

---

[5] In Barabin v. AstenJohnson, Inc., 2014 WL 2938457 (W.D. Wash.) (court order), the court granted a motion to remand in the Western District of Washington. It evaluated the issue under the standard for fraudulent joinder—a standard more favorable to Deggs's position in this case. Id. at *2. Consequently, the defendant asbestos companies in Barabin had to carry their heavy burden of proving under Washington law that a decedent wife's wrongful death complaint obviously failed to state a claim. Id. at *1. The remand order concluded that a Washington court addressing the issue before us could find that a wrongful death claim is not barred merely because the statute of limitations on the decedent's underlying claim expires prior to the decedent's death. Id. at *3-*4. But, this is the very proposition our case law has rejected.

discovered or should have discovered the cause of death. Id. at 345. The court ultimately rejected the assertion that, as a matter of law, the date of the decedent's death marks the time at which a wrongful death action accrues. Id. at 352. Instead, it held a wrongful death action accrues at the time the decedent's personal representative discovered, or should have discovered, the cause of action. Id. at 352-53.

But, whether the wrongful death cause of action accrues at death or upon discovery of causation is not at issue in this case. Here, under Calhoun and Grant, the accrual of the wrongful death action was preempted either by the earlier judgment against ACL or the expiration of the statute of limitations on Sundberg's underlying claims against the rest of the respondents.

Deggs also points out that other states have reached the opposite conclusion from our Supreme Court in Calhoun and Grant. She cites to Castorena v. Gen. Elec., 149 Idaho 609, 620, 238 P.3d 209 (2010) (holding that the fact the statute of limitations had run against decedent's personal injury claim did not bar a wrongful death suit), Mummert v. Alizadeh, 435 Md. 207, 210, 77 A.3d 1049 (2013) (concluding that a statute of limitations defense against a decedent's claim does not bar a subsequent wrongful death action), and Riggs v. Georgia-Pacific LLC, 2015 WL 404617, at *3, *5 (Utah 2015) (finding that a wrongful death action for asbestos-related death is a separate, nonderivative claim and it is not barred by prior personal injury actions for the same asbestos-related injuries).

Deggs's reliance on authority from other states is unsurprising, because her argument is not new. In fact, courts have been sharply divided on this issue for many years. See 3 STUART M. SPEISER & JAMES E. ROOKS, JR., RECOVERY FOR WRONGFUL DEATH § 15:14, at 55 (4th ed. 2005). There have been very few appellate court decisions since

the middle of the Twentieth Century. Id. And, those decisions treat cases dealing with this issue differently depending upon whether the decedent settled his case or brought it to judgment or if he allowed the statute of limitations to expire during his lifetime. See DAN B. DOBBS, ROBERT E. KEETON & DAVID G. OWEN, PROSSER AND KEETON ON TORTS § 127, at 957 (5th ed. 1984)

Some courts have held that no right of action remains for wrongful death beneficiaries if the decedent compromises his claim with the wrongdoer or executes a release for valuable consideration. RECOVERY FOR WRONGFUL DEATH § 15:14, at 55. Other courts have held that a release by a decedent during his life will not bar a later action for wrongful death. Id. at 56-57. The minority of courts have reasoned that because the cause of action for wrongful death does not arise until a decedent's death, it should be unaffected by acts of the injured person during his lifetime. Id. The logic of this minority position was highlighted in an early South Dakota case, Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, 1006 (1915). The Rowe court opined:

> We must confess our inability to grasp the logic of any course of so called reasoning through which the conclusion is drawn that the husband, simply because he may live to suffer from a physical injury and thus become vested with a cause of action for the violation of his own personal right, has an implied power to release a cause of action—one which has not then accrued; one which may never accrue; one which from its very nature cannot accrue until his death; and one which, if it ever does accrue, will accrue in favor of his wife and be based solely upon a violation of a right vested solely in his wife.

Id.

As a practical consideration, however, a settlement made with the decedent during his lifetime will take into account not only his diminished earning capacity while he does live, but also a decrease in his life expectancy and his earnings he would have made if

he had lived. RECOVERY FOR WRONGFUL DEATH § 15:14, at 59. In other words, the settlement effectuated by a decedent during his lifetime may have been an estimate and determination of all the damages expected to follow from the initial wrong. Id. The same is true of judgments. Depending on the precise allocation of the settlement or judgment, allowing a subsequent wrongful death claim may pose a risk of double recovery.

But, this danger of double recovery is not at issue in situations in which the decedent allowed the statute of limitations on his underlying claim to expire during his lifetime. PROSSER AND KEETON ON TORTS § 127, at 957. In fact, in these situations, many courts have held that the statute runs against the wrongful death action only from the date of death, even though at that time the decedent's own action would have been barred while he was living. Id.

Although the case law in Washington is indeed old, the Washington Supreme Court previously chose between these possible outcomes when it decided Calhoun and Grant in the 1930s.[6] It chose finality of settlements and judgments and preclusion of stale claims and potential double recovery. The legislature has not seen fit to correct this interpretation of the wrongful death statute. We see no reason to advocate for a change in Washington law.

Applying Grant, Deggs's claims against respondents fail as a matter of law. Sundberg had no valid cause of action against respondents at the time of his death,

---

[6] While Calhoun, Grant, and the majority of Deggs's claims involve preemption because of the expiration of the statute of limitations on the decedent's underlying claims instead of an earlier judgment or settlement, it is clear that, in Washington, this distinction is immaterial. See Grant, 181 Wash. at 581 (concluding that a cause of action for wrongful death is extinguished by an effective release executed by the deceased in his lifetime, by a judgment in his favor rendered during his lifetime, or by the failure of the deceased to bring an action for injuries within the period of limitation).

because there was either a judgment rendered in his favor or because he failed to bring an action for injuries within the statute of limitations period during his lifetime. Case law in Washington does not support Deggs's argument that would revive a wrongful death action when an individual dies no matter what was or was not already litigated during his lifetime. Moreover, Deggs's position is at odds with considerations of finality of judgments and preservation of evidence that are particularly relevant in this context.

The trial court did not err in granting respondents' motions for summary judgment. We affirm.

_Appelwick, J_

WE CONCUR:

_Cox, J._

<u>Deggs v. Asbestos Corp., No. 71297-7-I (consolidated with No. 71550-0-I)</u>

DWYER, J. (dissenting). Relying on <u>Calhoun v. Washington Veneer Co.</u>, 170 Wash. 152, 15 P.2d 943 (1932), and <u>Grant v. Fisher Flouring Mills Co.</u>, 181 Wash. 576, 44 P.2d 193 (1935), the majority concludes that "the accrual of the wrongful death action was preempted either by the earlier judgment against ACL or the expiration of the statute of limitations on Sundberg's underlying claims against the rest of the respondents." Majority at 14. Because I believe that these cases have since been overtaken by more recent Supreme Court decisions, and because the majority's reliance upon <u>Calhoun</u> and <u>Grant</u> both perpetuates the fiction that a wrongful death claim may expire before the decedent does and preserves the "topsy-turvy land" where such illogic exists,[1] I dissent.

I

"In Washington, wrongful death actions are strictly creatures of statute." <u>Atchison v. Great W. Malting Co.</u>, 161 Wn.2d 372, 376, 166 P.3d 662 (2007). Unlike Washington's survival statutes, which simply preserve *existing* causes of action a person could have maintained had death not occurred, the wrongful

---

[1] Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to the plaintiff. For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed—beyond the time fixed by the statute—commencing his suit which, but for the delay, he would have won.
<u>Dincher v. Marlin Firearms Co.</u>,198 F.2d 821, 823 (2d Cir. 1952) (Frank, J., dissenting) (footnotes omitted).

death statute creates a *new* and *original* cause of action following the decedent's death. Warner v. McCaughan, 77 Wn.2d 178, 179, 460 P.2d 272 (1969); see also Woodall v. Avalon Care Ctr.-Fed. Way, LLC, 155 Wn. App. 919, 930-31, 231 P.3d 1252 (2010); Wills v. Kirkpatrick, 56 Wn. App. 757, 759, 785 P.2d 834 (1990). The right to the benefit of this new and original action, however, does not belong to the decedent's estate. Maciejczak v. Bartell, 187 Wash. 113, 125, 60 P.2d 31 (1936). Instead, the right is given to certain of the decedent's relatives, as a means of compensating them for injuries to their own pecuniary interests, suffered as a consequence of the wrongful death. Gray v. Goodson, 61 Wn.2d 319, 326-27, 378 P.2d 413 (1963); Johnson v. Ottomeier, 45 Wn.2d 419, 423, 275 P.2d 723 (1954).

Although the right belongs to the decedent's relatives, only a personal representative of the decedent may exercise the right on their behalf, which is to say that only the decedent's personal representative has standing to bring a wrongful death action. Atchison, 161 Wn.2d at 378; Huntington v. Samaritan Hosp., 101 Wn.2d 466, 469, 680 P.2d 58 (1984); Wood v. Dunlop, 83 Wn.2d 719, 724, 521 P.2d 1177 (1974); Gray, 61 Wn.2d at 326-27; Maciejczak, 187 Wash. at 125; Dodson v. Cont'l Can Co., 159 Wash. 589, 593, 294 P. 265 (1930). Yet, even a personal representative lacks standing to bring a wrongful death action prior to the death of the decedent. This is so because a wrongful death cause of action cannot accrue before the decedent has died. Atchison, 161 Wn.2d at 379; Dodson, 159 Wash. at 593; cf. White v. Johns-Manville Corp., 103 Wn.2d 344, 352-53, 693 P.2d 687 (1985) (holding that "a wrongful death

action 'accrues' at the time the decedent's personal representative discovered, or should have discovered, the cause of action").[2] Once a wrongful death action does accrue, the decedent's personal representative must commence the action within the three-year limitation period set forth in RCW 4.16.080(2). Atchison, 161 Wn.2d at 377.

Thus, as a general rule, a wrongful death action may be prosecuted after the action accrues but must be commenced before the applicable limitation period expires. However, in 1935, our Supreme Court noted the existence of a "limitation" on this rule: "namely, at the time of death there must be a subsisting cause of action in the deceased." Grant, 181 Wash. at 581. Where the deceased, whether by action (prevailing on a personal injury claim, for instance) or inaction (failing to bring a personal injury claim within the statutory limitation period) during his or her lifetime, "pursued a course of conduct which makes it inequitable to recognize a cause of action for wrongful death," the "limitation" was said to apply. Johnson, 45 Wn.2d at 422-23 (citing Grant, 181 Wash. 576, and Calhoun, 170 Wash. 152). As announced, the source of this "limitation" was "[t]he wrongful death statute itself and generally recognized equitable principles." Johnson, 45 Wn.2d at 423.

Whereas the Supreme Court located the source of the "limitation" in the wrongful death statute and in equitable principles, the majority opinion herein concedes that "[t]he wrongful death statute is silent" on the question of "whether

---

[2] Nor, of course, can there be a personal representative of a decedent's estate prior to the decedent actually bothering to die.

the expiration of the statute of limitations for an individual's personal injury claims or a judgment or settlement on those same claims during his lifetime can preempt the accrual of his personal representative's wrongful death claim." Majority at 4-5. This concession highlights the uncertainty of the legitimacy of the "limitation" set forth in Calhoun and Grant, and begs this question: is there evidence elsewhere in the revised code of the legislature's intent to bar wrongful death actions, under certain circumstances, before they accrue?

Admittedly, there is evidence of the legislature's intent to subject wrongful death actions to a statute of limitation. Atchison, 161 Wn.2d at 377. See generally Wills, 56 Wn. App. at 759-60 (explaining that, although the wrongful death statute does not contain an express statute of limitation, the three-year limitation period contained in RCW 4.16.080(2) "has been applied to wrongful death claims because such claims qualify as 'any other injury to the person or rights of another not hereinafter enumerated'" (footnote omitted) (quoting Dodson, 159 Wash. at 591-92)). However, as our Supreme Court has explained in a series of recent decisions, statutes of limitation do not begin to run until a party has the right to apply to a court for relief—that is, once a claim accrues. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 511, 296 P.3d 821 (2013) (hereinafter MLB); Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc., 166 Wn.2d 475, 484-85, 209 P.3d 863 (2009); 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 575, 146 P.3d 423 (2006).

Of course, a wrongful death action cannot accrue before death. As a result, a personal representative lacks standing to bring such an action prior to the death of the decedent. It follows, then, that the time period preceding the death of the decedent should not be counted against the decedent's personal representative in considering observance of the three-year statutory limitation period. See Seamans v. Walgren, 82 Wn.2d 771, 775, 514 P.2d 166 (1973) ("When a person is prevented from exercising his legal remedy by some positive rule of law, the time during which he is prevented from bringing suit is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases.") In view of this, it may be reasoned that, in the event that the "limitation" set forth in Calhoun and Grant was, in fact, founded on a *statute of limitation*, Calhoun and Grant are inconsistent with more recent Supreme Court decisions, which have made clear that statutes of limitation cannot be applied so as to bar claims that have not yet accrued.[3]

These more recent decisions have, in the course of clarifying the manner in which statutes of limitation function, explained that, although statutes of

---

[3] These recent Supreme Court decisions are in accord with the view taken by the Restatement:

A cause of action for death is complete when death occurs. Under most wrongful death statutes, the cause of action is a new and independent one, accruing to the representative or to surviving relatives of the decedent only upon his death; and since the cause of action does not come into existence until the death, it is not barred by prior lapse of time, even though the decedent's own cause of action for the injuries resulting in death would be barred. In some jurisdictions, however, the wrongful death acts take the form of statutes providing for the survival of the decedent's own cause of action, in which case the statute of limitations necessarily runs from the time of his original injury.

RESTATEMENT (SECOND) OF TORTS § 899(c) at 442 (1979).

limitation cannot terminate the right to file a claim prior to its accrual, statutes of repose can. MLB, 176 Wn.2d at 511; accord Cambridge Townhomes, 166 Wn.2d at 484; 1000 Virginia, 158 Wn.2d at 575. "'A statute of repose terminates a right of action after a specified time, even if the injury has not yet occurred.'" 1000 Virginia, 158 Wn.2d at 574-75 (quoting Rice v. Dow Chem. Co., 124 Wn.2d 205, 211-12, 875 P.2d 1213 (1994)). In other words, a statute of repose "provides a time period in which the cause of action must *accrue*." Donovan v. Pruitt, 36 Wn. App. 324, 327, 674 P.2d 204 (1983). Thus, when a cause of action is made subject to both a statute of repose and a statute of limitation, such an action will be barred if it either does not accrue within the repose period or, after it accrues within the repose period, is not commenced within the limitation period. 1000 Virginia, 158 Wn.2d at 575.

It is apparent from these recent Supreme Court decisions that the "limitation" discussed in Calhoun and Grant was in the nature of a statute of repose, rather than a statute of limitation. The time period within which a wrongful death action must *accrue*, by virtue of this "limitation," is either the lifetime of the injured person or the statutory limitation period imposed upon the tort claims of the injured person. If the action does not accrue within either period, then it may not be maintained. See Johnson, 45 Wn.2d 419; Grant, 181 Wash. 576; Calhoun, 170 Wash. 152.

Although the legislature could, in all likelihood, have made wrongful death actions subject to a statutory period of repose, there is no indication in the wrongful death statute that it has ever chosen to do so. Cf. Wills, 56 Wn. App. at

-6-

763 ("While the Legislature may have the power to enact such a limitation period barring wrongful death claims even before they accrue, it is obvious to us that the Legislature did not do so here.") Furthermore, unlike the statute of limitation—codified in chapter 4.16 RCW—that has been applied to wrongful death actions,[4] there is no sweeping statute of repose that could be fairly construed to encompass wrongful death actions.

In the event that the decisions in Calhoun and Grant were actually based on a statute of limitation analysis, those decisions have not withstood the Supreme Court's more recent decisions clarifying the manner in which statutes of limitation function. On the other hand, in the event that Calhoun and Grant were actually premised upon a statute of repose analysis, they were based on a misperception and are unsupported by an appropriate legislative enactment. I would decide the dispute before this court on the basis of our Supreme Court's most recent pronouncements.

In fairness, the Calhoun-Grant "limitation" was also purportedly founded upon "generally recognized equitable principles." Johnson, 45 Wn.2d at 423. Notably, though, these equitable principles were not elucidated in Calhoun, Grant, Johnson, or in any other decision. While the equitable defense of laches is comparable to a statute of limitation, equity has no counterpart to a statute of repose. Moreover, as with statutes of limitation, the equitable defense of laches presupposes the existence of an accrued cause of action. See Newport Yacht

---

[4] RCW 4.16.080 ("The following actions shall be commenced within three years . . . (2) An action . . . for any other injury to the person or rights of another not hereinafter enumerated.").

Basin Ass'n of Condo. Owners of Supreme Nw., Inc., 168 Wn. App. 56, 77, 277 P.3d 18 (2012) ("'To constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce it.'" (quoting Waldrip v. Olympia Oyster Co., 40 Wn.2d 469, 477, 244 P.2d 273 (1952))). It follows, therefore, that, in the absence of a statute of repose, neither a statute of limitation nor the equitable principle of laches may be applied to bar a wrongful death action before it has accrued.

II

In a recent instructive decision, the Utah Supreme Court considered whether a wrongful death cause of action was foreclosed by virtue of the decedent prevailing in a related personal injury action during her lifetime. Riggs v. Ga.-Pac. LLC, 2015 UT 17, ¶ 8, 345 P.3d 1219. The Riggs court was asked to interpret Utah's wrongful death statute, which is nearly identical to Washington's wrongful death statute.[5] The statute's language, the court opined, "unambiguously, and without caveat, grants a person's heirs the right to 'maintain an action for damages' if they allege that the decedent's death was caused by 'the wrongful act or neglect of another.'" Riggs, 2015 UT 17, ¶ 11 (quoting Utah Code § 78B-3-106(1)). "When faced with such 'clear and unequivocal' language," the court continued, "there is no further need for analysis." Riggs,

---

[5] Compare Utah Code § 78B-3-106(1) ("[W]hen the death of a person is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death . . . ."), with RCW 4.20.010 ("When the death of a person is caused by the wrongful act, neglect, or default of another his or her personal representative may maintain an action for damages against the person causing the death.").

-8-

2015 UT 17, ¶ 11 (footnote omitted) (quoting Brinkerhoff v. Forsyth, 779 P.2d 685, 686 (Utah 1989)).  Thus, the court concluded, "We find nothing in the statute to suggest that the cause of action is tied to the decedent's underlying personal injury claim."  Riggs, 2015 UT 17, ¶ 11.

The lead opinion dismisses this decision, as well as others, by explaining that, in Calhoun and Grant, our Supreme Court "chose finality of settlements and judgments and preclusion of stale claims and potential double recovery."  Majority at 16.  Although the majority describes this as an "interpretation of the wrongful death statute," it seems better characterized as a choice between policy preferences.  This is significant because, while the majority is correct in noting that the legislature "has not seen fit" to overrule Calhoun and Grant, our Supreme Court has directed that "[t]he formulation of a new policy with regard to [a wrongful death] cause of action is the responsibility of the Legislature, not a task for this court."  Huntington, 101 Wn.2d at 470.  The point here is that the Riggs decision, and others like it, should not be disregarded on the ground that our Supreme Court has already expressed a policy preference.  Riggs should, instead, be considered as persuasive authority because the decision required interpretation of a statutory provision, the language of which is nearly identical to RCW 4.20.010.

Nevertheless, because the majority raises the specter of double recovery, I wish to note that I do not think it necessary to resort to the unforgiving approach

of barring a claim in order to address this issue.[6] Notably, in Grant itself, the court allowed both a survival action and a wrongful death action to go forward simultaneously, notwithstanding the apparent risk of double recovery. Presumably, the court was satisfied that this risk could be adequately addressed by the trial court, whether by carefully instructing the jury or otherwise. I see no impediment to this being similarly accomplished in successive actions.

## III

In the end, it is the inconsistency between, on the one hand, Calhoun and Grant, and, on the other, decisions such as 1000 Virginia and MLB, which, in my view, requires departure from the ancient set of cases. Calhoun and Grant fail to honor the distinction between statutes of limitation and statutes of repose and, as a result, are inconsistent with more recent Supreme Court pronouncements. While I would decide this matter on the basis of these more recent decisions, I readily admit that only our Supreme Court can definitively declare whether Calhoun and Grant have, indeed, been overtaken.

I would hold that the plaintiff has a cause of action. Accordingly, I would reverse.

_____

---

[6] As a practical matter, I believe that the cure for double recovery, as identified by the majority, may be more harmful than the disease—a belief that finds support in Division Two's Wills decision. In Wills, the court condemned "the situation where [a wrongful death] claim could be barred even before death triggers accrual of the right to bring the action" as being "illogical and unjust." 56 Wn. App. at 762; see also Fast v. Kennewick Pub. Hosp. Dist., No. 31509-6-III, slip op. at 10 (Wash. Ct. App. June 2, 2015) (examining Wills).