

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 6 2016

Madsen, C.J.

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Oct 6, 2014

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JUDY R. DEGGS, as Personal Representative for the estate of RAY GORDON SUNDBERG, | ) ) ) ) | No. 91969-1 |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | |
| ASBESTOS CORPORATION LIMITED; ASTENJOHNSON, INC.; CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION); INGERSOLL-RAND COMPANY, | ) ) ) ) ) ) ) | En Banc |
| Respondents, | ) ) ) | |
| and | ) ) | |
| BARTELLS ASBESTOS SETTLEMENT TRUST; GASKET COMPANY; GENERAL REFRACTORIES COMPANY; JOHN CRANE, INC.; METROPOLITAN LIFE INSURANCE COMPANY, and FIRST DOE through ONE HUNDREDTH DOE, | ) ) ) ) ) ) ) | Filed  OCT 0 6 2016 |
| Defendants. | ) ) ) | |

GONZÁLEZ, J.—Washington State's wrongful death act is based on the

English Lord Campbell's Act of 1846. Lord Campbell's Act gave certain

family members a cause of action for a relative's wrongful death, but only if that relative would have had a cause of action for the injury at the time of death had death not occurred. While our state's legislature did not adopt that limitation, almost a century ago, this court did. We have since carved out some exceptions. We are asked today to abandon that limitation completely and to reinstate a daughter's case for the wrongful death of her father even though the father did not have a cause of action against the defendants at the time of his death.

While we recognize that our cases adopting the limitation from Lord Campbell's Act's may have been incorrect, the petitioner has not shown that they are harmful. Nor has she shown that the legal underpinnings of those decisions have changed or disappeared since those opinions were decided. Accordingly, we affirm.

## FACTS

Ray[1] Sundberg served in the United States Navy during the Second World War. Afterward, he worked for decades in dockyards and lumber yards. Throughout his long work life, he was exposed to asbestos. This exposure caused him serious, long term harm. Between 1998 and 2000, he

---

[1] The original complaint, and therefore, the original caption, misspelled Sundberg's first name "Roy." This misspelling was corrected in the amended complaint. We order the caption corrected.

2

was diagnosed with lymphoma, pleural disease, and asbestosis relating to asbestos exposure. Clerk's Papers at 24.

In 1999, Sundberg filed a personal injury suit against nearly 40 defendants who had some part in exposing him to asbestos. Most of the defendants settled (the amounts are not in the record), though one did go to trial. Sundberg prevailed at trial, and in 2001, a jury awarded him $1,511,900 against the last remaining defendant.

Nine years later, at the age of 84, Sundberg died of asbestos-related disease. He was survived by his wife, Betty Sundberg, and their daughter, Judy Deggs. Deggs, acting as personal representative of her father's estate, brought this wrongful death action. Deggs primarily named defendants who had not been named in her father's 1999 personal injury action, though both suits named Asbestos Corporation Limited. Nothing in the record or briefing explains why her father did not name these new defendants in the earlier case. One of the defendants (later joined by others) moved to dismiss the suit as time barred because it was filed more than three years after Sundberg learned he had asbestos-related diseases.[2] In other words, due to

---

[2] While the record does not reveal the exact date when the personal injury suit accrued, the parties do not dispute that Sundberg's cause of action had accrued by 1999, when he filed a personal injury suit against Asbestos Corporation Limited and other defendants. The statute of limitations on personal injury suits is three years from the time the plaintiff knows all the essential elements of the cause of action. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 358, 693 P.2d 687 (1985); *see also* RCW 4.16.080(2).

3

the passage of time, Sundberg did not have a cause of action against these defendants for his injuries at the time of his death. The trial judge agreed and granted the motions to dismiss.

The Court of Appeals affirmed over a vigorous dissent. *Deggs v. Asbestos Corp. Ltd.*, 188 Wn. App. 495, 500, 354 P.3d 1 (citing *Grant v. Fisher Flouring Mills Co.*, 181 Wash. 576, 581, 44 P.2d 193 (1935); *Calhoun v. Wash. Veneer Co.*, 170 Wash. 152, 160, 15 P.2d 943 (1932)), *review granted*, 184 Wn.2d 1018, 361 P.3d 746 (2015). It concluded that since Sundberg could not have brought a second suit based on his asbestos exposures before he died, Deggs could not bring a wrongful death suit after he died. *Id.*

The dissent concluded that the analytical underpinnings of *Grant* and *Calhoun* had been undermined by subsequent case law. *Id.* at 514-15 (citing *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nicholas-Kiewit Constr. Co.*, 176 Wn.2d 502, 511, 296 P.3d 821 (2013)). Since, it concluded, "[o]f course, a wrongful death action cannot accrue before death," the statute of limitations could not start to run until that time either. *Id.* at 515 (Dwyer, J., dissenting). Essentially, Deggs argues that wrongful death is a distinct statutory claim and that her injuries are not

4

the same injuries her father suffered and sued for in 1999. Her injuries are due to the loss of her father, which did not occur until he died.

We granted Deggs' petition for review. *Deggs*, 184 Wn.2d 1018. We have received amicus briefs in support of Deggs from the Washington State Association for Justice Foundation and Bergman Draper Ladenberg PLLC. We have received briefs in support of Asbestos Corporation Limited and the other defendants from the Washington Defense Trial Lawyers.

ANALYSIS

"When the death of a person is caused by the wrongful act, neglect, or default of another his or her personal representative may maintain an action for damages against the person causing the death." RCW 4.20.010. The wrongful death action is for the benefit of statutory heirs, not the decedent or the decedent's estate. RCW 4.20.020; *Gray v. Goodson*, 61 Wn.2d 319, 327, 378 P.2d 413 (1963) (quoting *Maciejczak v. Bartell*, 187 Wash. 113, 60 P.2d 31 (1936)). The wrongful death act expresses our society's judgment that "a person may legally sustain damages when one, with whom a certain relationship existed, is wrongfully killed." *Gray*, 61 Wn.2d at 325. It is not truly a derivative action: "[T]he action for wrongful death is derivative only in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased." *Johnson v.*

*Ottomeier*, 45 Wn.2d 419, 423, 275 P.2d 723 (1954) (citing *Welch v. Davis*, 410 Ill. 130, 101 N.E.2d 547 (1951)); *see also Gray*, 61 Wn.2d at 325 (citing *Upchurch v. Hubbard*, 29 Wn.2d 559, 188 P.2d 82 (1947)). Accordingly, a wrongful death action accrues "at the time the decedent's personal representative discovered, or should have discovered, the cause of action." *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 352-53, 693 P.2d 687 (1985). *But see Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 379, 166 P.3d 662 (2007) (observing that "the rule is well-settled: wrongful death actions accrue at the time of death" (citing *Dodson v. Cont'l Can Co.*, 159 Wash. 589, 294 P. 265 (1930))).[3] It has a three year statute of limitations. *See Huntington v. Samaritan Hosp.*, 101 Wn.2d 466, 468, 680 P.2d 58 (1984) (citing RCW 4.16.080). Deggs filed this suit within three years of her father's death. Therefore, she contends, her suit was timely.

But while the wrongful death action exists for the benefit of the deceased's family, it is not completely separate from actions the deceased could have brought during life. These two types of actions are intertwined with each other and have consequences on each other. Both types of actions hold those who injure others liable for the damages they cause, but that

---

[3] *Atchison* asked whether the statute of limitations would be tolled during an heir's childhood. 161 Wn.2d at 375. It did not discuss either the discovery rule or *White*, 103 Wn.2d 344.

6

liability is subject to the broader law and the law's limitations. As the plaintiffs are asking us to reconsider one of those long-standing limitations, we take this opportunity to trace the development of that limitation in our common law.

For many centuries, English common law did not have a cause of action for family members to sue for their loved ones' wrongful deaths. FRANCIS B. TIFFANY, DEATH BY WRONGFUL ACT § 1, at 1-3 (2d ed. 1913). In 1846, motivated by the "toll of human life taken by the railways," the English parliament enacted "'[a]n act for compensating the families of persons killed by accidents.'" 15 SIR WILLIAM HOLDSWORTH, A HISTORY OF ENGLISH LAW 220 (1965); TIFFANY, *supra*, § 4, at 5. This act has become known as Lord Campbell's Act. TIFFANY, *supra*, § 4, at 5 (citing Fatal Accidents Act 1846, 9 & 10 Vict. c. 93 (Eng.)). As described by the leading treatise this court frequently turned to when considering early wrongful death cases, the act originally provided in part:

> That whensoever the death of a person shall be caused by wrongful act, neglect, or default, such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured.

*Id.* § 21, at 27. Lord Campbell's Act was the model for our wrongful death statute and wrongful death statutes around the country. *Armijo v. Wesselius*, 73 Wn.2d 716, 718, 440 P.2d 471 (1968) (citing Wex S. Malone, *The Genesis of Wrongful Death*, 17 STAN. L. REV. 1043 (1965)). The very first session of our territorial legislature of the state of Washington passed a version of it. LAWS OF 1854, § 496, at 220. In 1875, the territorial legislature expanded our wrongful death statute to substantially the form it has today:

> When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death.

LAWS OF 1875, § 4, at 4.

Based on both the plain language of the statute and the larger history of the doctrine, we reversed a wrongful death verdict against a defendant homeowner who shot a police officer, believing he was a prowler. *Welch v. Creech*, 88 Wash. 429, 437, 153 P. 355 (1915). We found the instructions given in that case permitted the jury to return a plaintiff's verdict even if it found the defendant acted in self-defense. *Id.* at 444. But since killing in self-defense is not wrongful, if the defendant had acted in self-defense, no recovery under the wrongful death act was available. *Id.* at 435 (citing *N. Pac. Ry. Co. v. Adams*, 192 U. S. 440, 24 S. Ct. 408, 48 L. Ed. 513 (1904)).

8

We remanded for retrial with proper instructions. *Id.* at 444. We reached similar holdings in cases where the deceased was killed while attempting to bomb a competitor's business and where the deceased was killed during an illegal prize fight. *Ryan v. Poole*, 182 Wash. 532, 533, 538-39, 47 P.2d 981 (1935); *Hart v. Geysel*, 159 Wash. 632, 634, 294 P. 570 (1930). In all of these cases, no recovery under the wrongful death act was available because the deceased was not killed by an act the law (at least at the time) categorized as wrongful. In other words, the decedent would not have had a cause of action for the injuries had no death occurred so neither do the survivors.

Meanwhile, we took a substantial step toward limiting our wrongful death statute in line with the limitations in Lord Campbell's Act in *Brodie v. Washington Water Power Co.*, 92 Wash. 574, 576-77, 159 P. 791 (1916). There, we held "that a release and satisfaction by the person injured of his right of action for the injury bars the right in the beneficiaries to maintain an action for his death occasioned by the injury." *Id.* at 576 (citing TIFFANY, *supra*, § 124, at 269-76). Since Brodie had settled the underlying personal injury case during his life for $2,500 in return for a release of all claims, the court dismissed the wrongful death suit. *Id.* at 575-76. *Accord N. Pac. Ry. Co.*, 192 U.S. at 450 (holding negligence waiver bound heirs even if their

cause of action had not yet accrued). Thus, in *Brodie*, the heirs could not pursue a wrongful death action because of something extrinsic to injury that resulted in their family member's death: the deceased's decision to release the defendant and thus the lack of a subsisting cause of action at the time of death.

In the 1930s, we come to the cases that are argued most strenuously here, *Calhoun*, 170 Wash. 152, and *Grant*, 181 Wash. 576. In those cases, we went beyond the substantive statutory limitations on the availability of the wrongful death statute recognized in *Welch*, 88 Wash. 429 (that the death was not the result of a wrongful act) to a generally procedural, extrinsic limitation: the statute of limitations on the deceased's underlying cause of action. In 1932, we concluded fairly summarily that a wrongful death action was not available if the statute of limitations on the underlying injury had run before the decedent died. *Calhoun*, 170 Wash. at 159-60 (citing *Horner v. Pierce County*, 111 Wash. 386, 191 P. 396 (1920)). We elaborated and refined our *Calhoun* reasoning in *Grant*, 181 Wash. 576. We observed that the wrongful death "action accrues at the time of death, and that the statute of limitations then begins to run." *Id.* at 580-81 (citing *Dodson*, 159 Wash. 589). But we noted that "[t]he rule . . . is subject to a well recognized

10

limitation, namely, at the time of death there must be a subsisting cause of action in the deceased." *Id.* at 581 (citing TIFFANY, *supra*, § 124).

In *Grant*, the decedent had filed a timely personal injury action for his injuries. *Id.* at 582. That suit was pending at the time of his death. *Id.* Based on that pending lawsuit, we concluded that Grant did have "a valid subsisting cause of action" at the time of his death and allowed the wrongful death suit to go forward. *Id.*

We recognized a significant exception to the *Calhoun/Grant* rule in *Johnson*, 45 Wn.2d 419.[4] *Johnson* was a wrongful death action filed by the personal representative of Anna Ottomeier, who was murdered by her husband who then killed himself. *Id.* at 420. At the time, either in the interests of marital tranquility or under the legal fiction that husband and wife were one, Washington common law did not allow spouses to sue each other in tort. *Id.* at 424. Since Anna Ottomeier could not have sued her husband for assaulting her, his personal representative argued, there was no "subsisting cause of action in the deceased" as required by *Grant* after her

---

[4] We respectfully disagree with the dissent that the court is disinterested in making sense of *Calhoun*, *Grant*, and *Johnson*. Taken together, these cases adopt Lord Campbell's Act limitations on wrongful death suit and recognize, based on legal developments since the time of Lord Campbell's Act, some exceptions.

11

murder. *Grant*, 181 Wash. at 580-81; *Johnson*, 45 Wn.2d at 424.[5] While acknowledging *Grant* and *Calhoun*, we allowed the wrongful death case to go forward. *Johnson*, 45 Wn.2d at 420, 423. Examining our own precedents, we found that there were two categories of wrongful death suits that had been dismissed based on the status or conduct of the deceased, and that the reasoning underlying neither category justified dismissing Johnson's suit, especially as there was no marital tranquility left to maintain. *Id.* at 424, 427.

In the first category were "cases in which the defense asserted inhered in the tort itself," such as claims that the defendant's act was not wrongful, claims of consent, and claims of contributory negligence. *Id.* at 422. The court concluded that no recovery under the wrongful death action was available in such cases because "the tort-feasor breached no duty owing to the decedent . . . [and thus the] death was not wrongful in the contemplation of the statute." *Id.*; *see also Ryan*, 182 Wash. at 538-39 (not wrongful for defendant to kill a man who was attempting to dynamite a building); *Welch*, 88 Wash. at 436-37 (self-defense is not wrongful). The *Johnson* court concluded that the victim's "disability to sue is personal to her, and does not

---

[5] This court abandoned common law spousal immunity in *Freehe v. Freehe*, 81 Wn.2d 183, 186, 500 P.2d 771 (1972), *overruled on other grounds by Brown v. Brown*, 100 Wn.2d 729, 737, 675 P.2d 1207 (1984).

inhere in the tort itself." 45 Wn.2d at 424 (citing *Deposit Guar. Bank & Tr. Co. v. Nelson*, 212 Miss. 335, 54 So. 2d 476 (1951), *overruled by Burns v. Burns*, 518 So. 2d 1205, 1207 (Miss. 1988)); *see also Ostheller v. Spokane & I.E.R. Co.*, 107 Wash. 678, 685, 182 P. 630 (1919). None of the parties argue that category is present here.

"The second category of cases in which this general rule of exclusion has been applied involves situations in which, after receiving the injuries which later resulted in death, the decedent pursued a course of conduct which makes it inequitable to recognize a cause of action for wrongful death." *Johnson*, 45 Wn.2d at 422-23 (citing *Brodie*, 92 Wash. 574; *Calhoun*, 170 Wash. 152; *Grant*, 181 Wash. 576). This postinjury category of extrinsic limitations on the availability of the wrongful death action includes prior litigation, prior settlements, and the lapsing of the statute of limitations.[6] *Id.* The court analogized spousal immunity to this sort of extrinsic limitation on the scope of the wrongful death action, concluded that

---

[6] We respectfully disagree with the dissent that *Calhoun* was "nonsensical" or that *Johnson*'s categorization of *Calhoun* was "an exercise in revisionist history." Dissent at 9, 6. *Calhoun* simply contained unfortunate dicta that was promptly clarified in *Grant*. Unfortunate dicta is not unknown at this court. The *Johnson* court took a thoughtful look at our cases concerning the accrual of a wrongful death action. 45 Wn.2d at 421-23. As discussed in more detail in text above, the *Johnson* court discerned two categories of limitations on wrongful death actions. It included *Grant* and *Calhoun* in the second category: equitable limitations on accrual. *Id.* at 423 (citing *Grant*, 181 Wash. 576; *Calhoun*, 170 Wash 152). Fairly read, the *Johnson* court found there was something inequitable in allowing the deceased's personal representative to maintain a suit based on injuries that the deceased had already been compensated for or had decided not to pursue.

there was no equitable reason to attribute spousal immunity to the wife's personal representative, and allowed the wrongful death suit to go forward. *Id.* at 424-25.

More recently, we found that the discovery rule applies in wrongful death suits to toll the statute of limitations. *White*, 103 Wn.2d at 345. Thus "[t]he wrongful death statute of limitation accrues at the time the wrongful death claimant knew or should have known that the death of the decedent was caused by his exposure to asbestos," rather than at the death of the decedent. *Id.* at 356. However, we cautioned:

> [W]e note we are not faced with, nor do we decide, a case in which the deceased is alleged by the defendant to have known the cause of the disease which subsequently caused his death. In that case there is a question as to whether the wrongful death action of the deceased's representative "accrued" at the time of the decedent's death, when the decedent first discovered or should have discovered the injury, or when the claimant first discovered or should have discovered the cause of death.

*Id.* at 347. This takes us to the question before us today: whether Deggs as her father's personal representative can maintain a suit when her father could not have.

Deggs asks us to overrule *Grant*, *Calhoun*, and *Johnson* to the extent they hold that the lapsing of the statute of limitations on the underlying personal injury claim bars the personal representative from bringing a

wrongful death claim. Deggs' Suppl. Br. at 13. Generally, this court will not overturn precedent unless there has been "a clear showing that an established rule is incorrect and harmful." *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).[7] Deggs makes a fairly persuasive argument that our precedents were incorrect at the time they were announced. They grafted onto our wrongful death statute broadly procedural limitations that the English Parliament, not our legislature, adopted. Further, the *Calhoun* court suggested (though it did not hold) that a wrongful death cause of action accrues at the time of the underlying injury to the deceased, not upon their death. *See Calhoun*, 170 Wash. at 160 (citing *Horner*, 111 Wash. 386). That was incorrect; a wrongful death action accrues "at the time the decedent's personal representative discovered, or should have discovered, the cause of action." *White*, 103 Wn.2d at 352-53.

But while *Grant* and *Calhoun* may have been incorrect at the time they were announced, Deggs has not shown that they are harmful. Deggs makes a fairly conclusory argument that our precedent is harmful because it "bars the personal representative from pursuing legitimate wrongful death

---

[7] Amicus Washington Defense Trial Lawyers suggests that the *Stranger Creek* analysis does not present the appropriate analytical lens to consider whether to reverse *Calhoun* and *Grant* because, in amicus's view, those opinions construe a statute, not the common law. But neither opinion suggests that the wrongful death statute itself contains the limitation the opinions embrace.

15

claims, benefiting tortfeasors and rewarding their wrongdoing that results in their victims' deaths." Deggs' Suppl. Br. at 14. Given how we have restricted the rule from Lord Campbell's Act in *Grant* and *Johnson*, and given that we found in *White* that the discovery rule applies to wrongful death suits, any harm is less clear. We are not presented here with a case where the deceased knew of a cause of action, was prevented from bringing a personal injury claim within the statute of limitations, and then passed away, leaving children or other dependents destitute. It may be that case would show the sort of harm necessary to overrule our case law. Instead, we are faced with a case where the deceased knew of the injury, sued, and either settled with or won against all the named defendants.[8]

Further, while the doctrine of legislative acquiescence does not govern this case as *Grant* and *Calhoun* are not statutory interpretation cases, the legislature's lack of response adds weight to the conclusion that they have not been harmful. *Cf. 1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 181, 149 P.3d 616 (2007) (citing *State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1988)). The legislature has not indicated any dissatisfaction with this court grafting on Lord Campbell's Act's limitation despite having 84

---

[8] Amicus Bergman Draper Ladenburg PLLC argues the *Calhoun/Grant* rule is harmful because of cases where the cause of death is not known until well after the decedent has passed away and intrusive pathologies have been done. But those cases would fall under the discovery rule in *White*, and *Calhoun/Grant* should not be an impediment.

16

years to do so and despite amending the wrongful death statute itself once and the related wrongful death beneficiary statute four times. *See* LAWS OF 2011, ch. 336, §§ 89-90 (making statutory language gender neutral); LAWS OF 2007, ch. 156, §§ 29-30 (extending beneficiary rights to domestic partners); LAWS OF 1985, ch. 139 (extending rights to step children); LAWS OF 1973, 1st Ex. Sess., ch. 154, § 2 (extending beneficiary rights to adult brothers). We conclude Deggs has not shown that *Grant* and *Calhoun* are harmful.[9]

Nor has she shown other reasons exist to abandon our precedent. We have recently observed that "we can reconsider our precedent not only when it has been shown to be incorrect and harmful but also when the legal underpinnings of our precedent have changed or disappeared altogether." *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014) (citing *United States v. Gaudin*, 515 U.S. 506, 521, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)). In *W.G. Clark*, we had occasion to revisit whether the Employee Retirement Income

---

[9] In contrast, this court could inflict considerable harm on settled expectations if we were to abandon the rule from Lord Campbell's Act now. "*Stare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision." *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 202, 112 S. Ct. 560, 116 L. Ed. 2d 560 (1991). Many entities that reasonably relied on our precedent to close the book on potential claims based on the passage of the underlying statute of limitations would now find themselves subject to potential liability based on a court opinion they were not parties to.

Security Act of 1974 (ERISA) (29 U.S.C. §§ 1001-1461) preempted wage claims under two Washington statutes. *Id.* at 57. Relying on then-good precedent, we had previously found ERISA preemption. *Id.* (citing *Puget Sound Elec. Workers Health & Welfare Tr. Fund v. Merit Co.*, 123 Wn.2d 565, 870 P.2d 960 (1994); *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 13 P.3d 622 (2000)). Since that time, courts across the country had "come to a consensus that these types of state law claims are <u>not</u> preempted by ERISA because they have only a tenuous connection to ERISA plans." *Id.* (citing *S. Cal. IBEW–NECA Tr. Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 925-27 (9th Cir. 2001)). While "[r]espect for precedence is strongest 'in the area of statutory construction'" since the legislature is free to amend statutes to address interpretations it disagrees with, we recognized that cases we had relied on in *Merit* and *Trig* had been overruled, joined the emerging consensus, and overruled our precedent. *Hubbard v. United States*, 514 U.S. 695, 711, 115 S. Ct. 1754, 131 L. Ed. 2d 779 (1995) (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)); *W.G. Clark Constr.*, 180 Wn.2d at 58, 62 (citing *Standard*, 247 F.3d at 929).[10]

---

[10] We caution that stare decisis is applied less rigorously in the area of constitutional interpretation. This is partially for the pragmatic reason that statutes are easier to amend than constitutions. If the legislature does not approve of a judicial interpretation of a

18

In dissent at the Court of Appeals, Judge Dwyer found that that the underpinnings of *Calhoun* and *Grant* had been undermined based on the emerging understanding of the nature of statutes of limitations. *Deggs*, 188 Wn. App. at 514-16. Relying on several recent cases, Judge Dwyer contended that "statutes of limitation do not begin to run until a party has the right to apply to a court for relief—that is, once a claim accrues." *Id.* at 514-15 (Dwyer, J., dissenting) (citing *Huber*, 176 Wn.2d at 511; *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 484-85, 209 P.3d 863 (2009); *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006)). Since *Calhoun* and *Grant* essentially ran the statute of limitations from a date that occurred before the cause accrued, Judge Dwyer reasoned, they were incorrect. *Id.* Instead, in his view, *Calhoun* and *Grant* treated the statute of limitations as a statute of repose without any evidence the legislature intended to do so. *Id.* at 516 (Dwyer, J.,

---

statute, the legislature can simply amend the statute. *See Hubbard*, 514 U.S. at 711-12 (quoting *Illinois Brick Co.*, 431 U.S. at 736). Amending constitutions is much more difficult. *Compare* WASH. CONST. art. II, §§ 1, 17-22, *with* WASH. CONST. art. XXIII. But this pragmatism must give way "to the lessons of experience and the force of better reasoning" when our opinions interpreting our constitutions are found wanting because they fail to give adequate protection to constitutionally protected liberties or due respect to constitutionally mandated procedures. *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 407-08, 52 S. Ct. 443, 76 L. Ed. 815 (1932) (Brandeis, J., dissenting), *overruled in part by Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 387, 58 S. Ct. 623, 82 L. Ed. 907 (1938).

19

dissenting). Accordingly, in his view, the *Calhoun/Grant* rule should be abandoned.

While there is some force to this argument, *Grant* did not hold that the statute of limitations on a wrongful death suit can lapse before the wrongful death cause of action accrued. Instead, it held there was an exception to the rule that the wrongful death cause of action accrues at death: there must be an existing cause of action in the deceased at the time of death, and this principle applied to statutes of limitation. *Grant*, 181 Wash. at 580-81 (citing TIFFANY, *supra*, § 124).[11]

At least one of the underpinnings of *Calhoun* has been undermined. It is now clear that a wrongful death cause of action accrues at the time of death, not the time of the underlying injury to the deceased, as the authority cited in *Calhoun* suggests. *Compare Calhoun*, 170 Wash. at 160 (citing *Horner*, 111 Wash. 386), *with White*, 103 Wn.2d at 352-53. But we cannot say that *Calhoun* and *Grant* themselves have been undermined since *Grant* itself points to the strangeness of dismissing a tort case based on a statute of limitations that lapsed before the cause of action accrued and clarifies that

---

[11] The dissent asserts that it has correctly understood *Grant* and that we have not, based on the difference between a claim being barred and a claim being extinguished. Dissent at 11. We respectfully disagree with the dissent that we have misunderstood *Grant*. Specifically, *Grant* says that "this court has held that the [wrongful death] action accrues at the time of death," but that "[t]he rule, however, is subject to a well recognized limitation, namely, at the time of death there must be a subsisting cause of action in the deceased." 181 Wash. at 580-81.

under Washington law, a wrongful death action does accrue at the time of death. *Grant*, 181 Wash. at 580-81. Further, courts around the country are currently split on when the statute of limitations on a wrongful death action accrues and on whether a judgment in a personal injury case arising out of the same set of facts bars a subsequent wrongful death action. *See* M.C. Dransfield, *Time from Which Statute of Limitations Begins to Run Against Cause of Action for Wrongful Death*, 97 A.L.R.2d 1151, §§ 2-3 (1964) (collecting accrual cases); Vitauts M. Gulbis, Annotation, *Judgment in Favor of, Or Adverse to, Person Injured as Barring Action for His Death*, 26 A.L.R.4th 1264 (2015) (collecting prior judgment cases). As courts across the country are split on critical issues before us, this case is unlike *W.G. Clark*, where *every* court interpreted ERISA preemption differently than we had. While reasonable minds might have differed at the time *Grant* and *Calhoun* were announced, we find that their underpinnings have not been sufficiently undermined to justify abandoning them.

We find this case is squarely governed by *Calhoun* and *Grant*. Under *Calhoun* and *Grant*, the statute of limitations on Sundberg's underlying claim lapsed during his life and thus this wrongful death suit was properly dismissed.

CONCLUSION

21

A wrongful death "action accrues at the time of death" so long as there is "a subsisting cause of action in the deceased" at the time of death, subject to exceptions not present here. *Grant*, 181 Wash. at 580-81 (citing TIFFANY, *supra*, § 124). We find insufficient cause to abandon this well-established precedent at this time. We affirm the courts below.

_____
Gonzáles, J.

WE CONCUR:

_____          _____


_____          _____
Owens, J.                                McCloud, J.

_____          _____
Fairhurst. J.                            Yu, J.

*Deggs v. Asbestos Corp. Limited, et al.*

No. 91969-1

STEPHENS, J. (dissenting)—Judy Deggs, acting as personal representative, brought a wrongful death action under RCW 4.20.010 within three years of the death of her father, Ray Sundberg. The majority does not doubt that Deggs's statutory action was timely filed, but it holds that any claim was barred because the statute of limitations ran on her father's personal injury claims before he died. I respectfully dissent. The majority's holding is contrary to Washington's wrongful death statute, which was enacted to allow a free-standing cause of action for family members that cannot arise before the death of their loved one. The majority's sole justification for undermining the statute is reliance on precedent—more specifically, on the holding of a single case we subsequently recognized was wrong and have never extended. The majority agrees this precedent is incorrect, but sees no harm in perpetuating its

topsy-turvy illogic. I do. I would overrule *Calhoun v. Washington Veneer Co.*, 170

Wash. 152, 15 P.2d 943 (1932), and disapprove of the dicta describing it in *Grant v.*

*Fisher Flouring Mills Co.*, 181 Wash. 576, 581-82, 44 P.2d 193 (1935) and *Johnson*

*v. Ottomeier*, 45 Wn.2d 419, 423, 275 P.2d 723 (1954). Adhering to the language

and purpose of RCW 4.20.010, I would clarify that the timeliness of an inter vivos

personal injury action by the decedent has no bearing on the viability of a wrongful

death action brought by the personal representative. The statute authorizes a claim

for wrongful death so long as the decedent's death was "wrongful" in the sense that

he had the right to bring a claim for injuries during life (regardless of whether he did

so), and so long as no prior judgment or settlement and release bars the claim. If

there are to be additional limitations on a wrongful death claim, the legislature, and

not this court, should impose them.

## ANALYSIS

Since before statehood, Washington has provided a statutory cause of action

for wrongful death, in language substantially similar to current RCW 4.20.010:

> When the death of a person is caused by the wrongful act, neglect, or default
> of another his or her personal representative may maintain an action for
> damages against the person causing the death; and although the death shall
> have been caused under such circumstances as amount, in law, to a felony.

Though a wrongful death action "derives from the wrongful act causing the death,

rather than from the person of the deceased," *Johnson*, 45 Wn.2d at 423, it is entirely

separate and distinct from any personal injury action that arises from the same set of facts and survives to the decedent's estate under RCW 4.20.060. *See* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 31.01, at 331-32 (6th ed. 2012) (WPI) (identifying separate survival and wrongful death claims, the former for injuries personal to the decedent and the latter for losses to specified beneficiaries); *see also Estate of Yaeko Otani v. Broudy*, 151 Wn.2d 750, 755, 92 P.3d 192 (2004) (noting that "wrongful death and survival actions can be distinguished in that the wrongful death statutes govern postdeath damages of the deceased and the survival statutes govern predeath damages").

A wrongful death cause of action accrues, and the applicable statute of limitations therefore commences, no sooner than upon the death of the personal representative's decedent—the first point in time at which a plaintiff entitled to bring the action may be appointed. *See Dodson v. Cont'l Can Co.*, 159 Wash. 589, 596, 294 P. 265 (1930). The limitation period is further subject to a discovery rule. *See White v. Johns-Manville Corp.*, 103 Wn.2d 344, 353, 693 P.2d 687 (1985) (holding action "'accrues' at the time the decedent's personal representative discovered, or should have discovered, the cause of action," and that whether death marks that time "is a question for the trier of fact"); *accord Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 379, 166 P.3d 662 (2007) (refusing to toll statute of limitations based

on beneficiary's minority before being appointed personal representative, and recognizing that "[w]hile wrongful death actions clearly accrue at the time of death, thus commencing the time for filing, the statute of limitations can be tolled by personal disability or minority").[1]

Liability for wrongful death arises only when death is "wrongful." A long line of authority recognizes a limitation on the statutory cause of action, "that the

---

[1] The majority observes that "courts around the country are currently split on when the statute of limitations on a wrongful death action accrues and on whether a judgment in a personal injury case arising out of the same set of facts bars a subsequent wrongful death action." Majority at 19-20. I fail to see why this matters. Whatever the state of the law might be in other jurisdictions, there is no split of authority in Washington on the question of accrual. Our cases from *Dodson* through *Atchison* make clear that the statutory action under RCW 4.20.010 accrues at the time of death, subject to tolling.

As for whether a prior recovery in a personal injury action may bar the claim, that is not an issue before us, contrary to the majority's suggestions. *See* majority at 21 (characterizing bar due to prior recovery as one of the "critical issues before us"); *see also id.* at 16 (purporting to leave open the possibility of overruling *Calhoun* in a different case, but not here, "where the deceased knew of the injury, sued, and either settled with or won against all the named defendants"). While the specter of "double recovery" floats about this case, nothing in the record shows that Sundberg recovered judgment against any of the defendants to this action or executed a contractual release in their favor. Nor have the defendants raised arguments based on issue or claim preclusion in this court. Moreover, whether this wrongful death action is barred under legal, contractual, or equitable principles based on Sundberg's prior recovery presents an entirely different question from whether it is barred by the rule in *Calhoun*. Finally, where the possibility of double recovery exists between a claim personal to the decedent and a wrongful death claim, we have addressed it by tailoring damages, not by barring a timely wrongful death claim. *See Criscuola v. Andrews*, 82 Wn.2d 68, 70-71, 507 P.2d 149 (1973) (refusing to disallow overlapping survival and wrongful death actions, and instead avoiding double recovery by limiting lost income in survival action to net accumulations); WPI 31.01 cmt. at 336 (recognizing that same recovery may be allowed under survival and wrongful death statutes and "[c]are must be taken to avoid allowing a double recovery").

wrongful act or default must be of such character as would have entitled the injured person to maintain an action and recover damages, had not death ensued; stated conversely, if the deceased never had a cause of action, no right of action accrues under the wrongful death statute." *Upchurch v. Hubbard*, 29 Wn.2d 559, 564, 188 P.2d 82 (1947) (citing *Ryan v. Poole*, 182 Wash. 532, 47 P.2d 981 (1935)). This limitation expresses the requirement that the death be actionable, i.e., that there be a "subsisting cause of action." *See, e.g., Ostheller v. Spokane & Inland Empire R.R. Co.*, 107 Wash. 678, 688, 182 P. 630 (1919) (no cause of action due to decedent's contributory negligence); *Hart v. Geysel*, 159 Wash. 632, 633, 636-37, 294 P. 570 (1930) (no cause of action where decedent consented to prize fight); *Welch v. Creech*, 88 Wash. 429, 435, 444, 153 P. 355 (1915) (no cause of action where defendant acted in self-defense). The court in *Johnson* described this category of cases imposing a limitation on wrongful death actions as distinct from a second category involving "situations in which, after receiving the injuries which later resulted in death, the decedent pursued a course of conduct which makes it inequitable to recognize a cause of action for wrongful death." 45 Wn.2d at 422-23. Into this category fall cases in which the decedent during life pursued a personal injury action and gave the wrongful death defendant "an effective release and satisfaction." *Id.* at 423 (citing *Brodie v. Wash. Water Power Co.*, 92 Wash. 574,

159 P. 791 (1916)). Notably, the court described this category as based on "equitable principles" rather than the wrongful death statute itself. *Id.* *Johnson* placed *Calhoun* in the second category, deriving the "rule" from *Calhoun* that the majority applies here: no action for wrongful death can be brought if the statute of limitations on any personal injury action the decedent could have brought ran before his death. *See id.*

This characterization of *Calhoun* was certainly an exercise in revisionist history. The actual holding in *Calhoun* was that the wrongful death claim was dependent on the personal injury claim and was *untimely*:

> Appellant did not have a cause of action against respondent because of the death of her husband, but because of the negligence of respondent. The negligence was the cause; the death was the result. Under the statute, the claim for damages accrued, if at all, at the time of the injury to Claude Calhoun.

170 Wash. at 160.

Almost immediately, this court in *Grant* recognized the error in *Calhoun*'s reasoning:

> Respondent contends that [*Calhoun*] lays down the rule that the action for wrongful death accrues when the deceased person sustained injury through the negligence of the party charged. There is language in the opinion susceptible of that construction, but to so construe the decision brings it in direct conflict with the case of *Dodson*. . . . In view of the facts in the *Calhoun* case, we think that decision can, and should, be so interpreted as to avoid conflict with the decision in the *Dodson* case.

181 Wash. at 581. Thus, the court in *Grant* distinguished *Calhoun* on its facts instead of overruling it.[2] In so doing, it placed *Calhoun*, as well as *Brodie*, in the category of cases requiring a "subsisting cause of action," and made no reference to any category of cases based on "equitable principles." *Id.* at 580-81. That further revision of categories and recasting of the rule in *Calhoun* came in *Johnson*, perhaps in an attempt to make *Grant* as well as *Calhoun* square with our precedent. *Johnson*, 45 Wn.2d at 422-23.

By the time the rule in *Calhoun* reached the Court of Appeals below, confusion about how to explain it was apparent. Lacking a consistent description, the court took a new tack and characterized the rule as resting on "preemption":

> Here, under *Calhoun* and *Grant*, the accrual of the wrongful death action was preempted either by the earlier judgment against ACL [Asbestos Corporation Limited[3]] or the expiration of the statute of limitations on Sundberg's underlying claims against the rest of the respondents.

---

[2] The court in *Grant* said *Calhoun* was factually similar to *Flynn v. New York, New Haven & Hartford R.R. Co.*, 283 U.S. 53, 51 S. Ct. 357, 75 L. Ed. 837 (1931), the only difference being that the decedent in that case died without bringing any personal injury action. *Grant*, 181 Wash. at 582. The court did not consider that *Flynn*, which concerned a statute quite different from our wrongful death act, rested on a determination that the wrongful death claim was *derivative* of the personal injury claim—a proposition this court has rejected. *See Johnson*, 45 Wn.2d at 423-24.

[3] As noted, the record does not show that judgment was entered against Asbestos Corporation Limited. Deggs represents that there was no judgment, nor a release. Deggs' Suppl. Br. at 2 n.1.

*Deggs v. Asbestos Corp. Ltd.*, 188 Wn. App. 495, 508, 354 P.3d 1, *review granted*, 184 Wn.2d 1018, 361 P.3d 746 (2015); *see also id.* at 500 (describing *Calhoun* and *Grant* as holding that "a decedent's inaction as to his claims during his lifetime can preempt the accrual of a personal representative's wrongful death cause of action").

It is important to trace this path since *Calhoun* to underscore that we do not know what its rule is actually premised on—whether accrual, equity, preemption, or something else. The majority, understandably, does not attempt to settle the confusion or to justify the correctness of the rule ascribed to *Calhoun*.[4] The majority admits that *Calhoun*, *Grant*, and *Johnson* erroneously "grafted onto our wrongful death statute broadly procedural limitations that the English Parliament, not our legislature, adopted." Majority at 15.[5] But, the majority's disinterest in making sense of *Calhoun*, *Grant*, and *Johnson* makes it all the more remarkable to insist on adhering to this precedent. It rings hollow to suggest we are dealing with "well-

---

[4] I believe the majority adds to the confusion by simultaneously rejecting *Calhoun*'s view that a wrongful death claim may accrue before death and embracing "an exception to the rule that the wrongful death cause of action accrues at death" premised on *Grant*, but contrary to *Johnson*. Majority at 20.

[5] As the court in *Johnson* noted, former wrongful death statutes contained language traceable to the Fatal Accidents Act 1846, 9 & 10 Vict. c. 93 (Eng.) (Lord Campell's Act) limiting claims to "cases where the decedent 'might have maintained an action had he lived, against the latter [tort-feasor], for an injury caused by the same act or omission.' Laws of 1873, chapter 58, § 656, p. 169; Code of 1881, chapter 61, § 717, p. 149." 45 Wn.2d at 426 (alteration in original). We described the removal of this exclusionary language by the legislature as a "deliberate act." *Id.* at 427.

established precedent," majority at 22, and are being asked to abandon a clear limitation on wrongful death claims adopted almost a century ago. *See* majority at 2. When all is said and done, this court has been unable to describe the *Calhoun* "rule" the same way twice. And until today, we have never applied it. The "settled expectations" the majority seeks to protect, majority at 17 n.9, simply do not exist.

I would put an end to *Calhoun*'s nonsensical rule right now. Our approach to abandoning erroneous precedent is more flexible than the majority allows. "[W]e can reconsider our precedent not only when it has been shown to be incorrect and harmful but also when the legal underpinnings of our precedent have changed or disappeared altogether." *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014). We may reconsider precedent not only when other courts have interpreted a matter differently than we have, *see* majority at 21, but also when our own understanding of the law has changed. *See Ralph v. Dep't of Nat. Res.*, 182 Wn.2d 242, 343 P.3d 342 (2014).

Our understanding of the interplay between inter vivos personal injury actions, survival actions, and wrongful death actions has evolved since *Calhoun*, particularly with respect to questions of accrual and application of the statute of limitations. We have since recognized that the discovery rule applies to wrongful death claims and that its application turns on what the personal representative—not

the decedent—knew or should have known in order to bring suit. *White*, 103 Wn.2d at 353; *see Atchison*, 161 Wn.2d at 380 (holding the tolling statute applies only to the person entitled to bring the wrongful death action, the personal representative).

More generally, recent case law has clarified the nature of statutes of limitations as distinguished from statutes of repose. "A statute of limitation bars a plaintiff from bringing an accrued claim after a specific period of time. A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred." *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 511, 296 P.3d 821 (2013) (*Wash. State MLB*). "Usually, a cause of action accrues when the party has the right to apply to a court for relief." *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006). Because only the personal representative has the right to bring a wrongful death claim, the claim cannot accrue before death. As Judge Stephen J. Dwyer wryly noted in his dissent below, there can be no personal representative "prior to the decedent actually bothering to die." *Deggs*, 188 Wn. App. at 513 n.8. Because a statute of limitations cannot begin to run before a claim accrues, "*Calhoun* and *Grant* are inconsistent with more recent Supreme Court decisions, which have made clear that statutes of limitation cannot be applied so as to bar claims that have not yet accrued." *Id.* at 515 (Dwyer, J., dissenting); *cf.*

RESTATEMENT (SECOND) OF TORTS § 899 cmt. c (AM. LAW INST. 1979) ("since the cause of action does not come into existence until the death, it is not barred by prior lapse of time, even though the decedent's own cause of action for the injuries resulting in death would be barred").

The majority insists that the interpretation of the *Calhoun* rule in *Grant* does not run afoul of our modern statute of limitations decisions because

> *Grant* did not hold that the statute of limitations on a wrongful death suit can lapse before the wrongful death cause of action accrued. Instead, it held there was an exception to the rule that the wrongful death cause of action accrues at death: there must be an existing cause of action in the deceased at the time of death, and this principle applied to statutes of limitation.

Majority at 19-20. In fact, this was not the holding in *Grant*. The court never suggested the wrongful death claim accrued at some point other than upon death. *See Grant*, 181 Wash. at 580. And, it emphatically recognized that the statute of limitations did not begin to run until that time. *Id.* It disapproved of *Calhoun*'s language to the contrary. *Id.* at 581. The wrongful death claim in *Grant* was undoubtedly timely.

Instead, what *Grant* held—erroneously based on its new interpretation of *Calhoun*—is that a wrongful death claim is entirely *extinguished* if the statute of limitations ran on an accrued personal injury claim before the decedent's passing. *Id.* at 581-82. Viewed in light of the language of our modern cases, this describes a

judicially imposed statute of repose on wrongful death claims. "A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred." *Wash. State MLB*, 176 Wn.2d at 511. If a claim does not accrue within the period of the statute of repose, the prospective plaintiff loses the right to file that claim. *See id.; 1000 Va.*, 158 Wn.2d at 575.

By embracing the *Calhoun* rule as interpreted in *Grant,* the majority for the first time applies this judicially created statute of repose to cut off a wrongful death claim before it accrues.[6] This is harmful on multiple levels. First, courts have no authority to create statutes of repose. Only the legislature, able to fully consider the social costs and benefits of cutting off meritorious claims in favor of finality, may do so. It has not imposed a repose period on wrongful death claims. To the contrary, the legislature early on removed limiting language from the original wrongful death statutes that tied wrongful death claims to whether the decedent might have

---

[6] Even as the majority applies *Calhoun* today to dismiss Deggs's wrongful death action, it wants to leave open the possibility that it would not apply the same rule to facts the court in *Calhoun* contemplated. *Compare* majority at 16 (suggesting rule may be harmful where no personal injury claim is brought and dependents are left destitute), *with Calhoun*, 170 Wn.2d at 154, 160 (acknowledging plaintiff's allegation that he did not know dangerous character of exposure by date claim accrued; dismissing based on accrual). *See also Grant*, 181 Wash. at 581-82 (suggesting no difference between *Calhoun* (personal injury claim brought) and *Flynn* (no personal injury claim brought)). The majority's limiting language appears to be merely palliative dicta.

maintained an action had he lived. *See Johnson*, 45 Wn.2d at 426. We should adhere to the statute's plain language.

Second, consider the inherent harm in cutting off a remedial cause of action for dependents based on nothing more than their loved one's inaction during life. *See* RCW 4.20.010; *Gray v. Goodson*, 61 Wn.2d 319, 324, 378 P.2d 413 (1963) (noting "that the [wrongful death] statute, being remedial in nature, is to be liberally construed"). This is the unjust consequence of extending the "subsisting cause of action" notion beyond the relevant question of whether governing law gives the decedent the *right* to sue for injuries during his lifetime, to embrace the irrelevant question of whether he timely did so. Nothing in the language of the wrongful death statute expresses this limitation. The only requirement is that the death be "wrongful." *Ryan*, 182 Wash. at 535-38 (explaining the subsisting cause of action requirement traces to "'wrongful act or neglect'" language in the statute (internal quotation marks omitted) (quoting *Ostheller*, 107 Wash. at 681)).

It is telling that the majority does not adopt *Johnson*'s description of *Calhoun* and *Grant* as reflecting "equitable principles," *Johnson*, 45 Wn.2d at 423, because there is nothing equitable in this. I can think of no other context in which the mere failure to bring suit is regarded as blameworthy conduct comparable to seeking a second recovery after the defendant has been released. *See id.* (describing *Brodie*,

92 Wash. 574, as equitable bar to claim where decedent gave defendant effective release and satisfaction). Nor am I aware of any other context in which equity has been relied on to shorten, rather than extend, a statutory limitation period, much less to extinguish a cause of action before it can accrue.

When we set aside the distracting worry about the possibility of Deggs obtaining a double recovery, *see supra* note 1, and focus on the rule that is being applied to dismiss this wrongful death claim, it is apparent that the majority's holding perpetuates a significant injustice. Barring a wrongful death claim based on expiration of the statute of limitations on a separate personal injury claim the decedent could have brought during life contradicts RCW 4.20.010 and undermines its remedial purpose. The rule derived from *Calhoun*, which the majority applies for the first time in this case, is both incorrect and harmful, and should be put to rest.

## CONCLUSION

I would overrule *Calhoun* and disapprove of the dicta recasting it in *Grant* and *Johnson*. Deggs's wrongful death action is not barred by expiration of the statute of limitations applicable to inter vivos personal injury claims. The action was timely commenced within three years of Sundberg's death.[7] Whether the action, or claims

---

[7] The parties agree that the general, three-year limitation period in RCW 4.16.080 applies in this case. Washington's wrongful death act does not contain its own statute of limitations. In a different case pending before this court, we must decide whether the

against certain defendants, are barred under other principles is not before us. If there are grounds to disallow Deggs's wrongful death action based on Sundberg having already recovered from any of these defendants, I trust those arguments can either be addressed on remand or have already been addressed or abandoned. I would reverse the Court of Appeals and remand to the trial court for further proceedings.

---

special statute of limitations in RCW 4.16.350 applies to wrongful death claims involving health care negligence. *See Fast v. Kennewick Pub. Hosp. Dist.*, 185 Wn.2d 1001, 366 P.3d 1244 (2016) (granting review).

Stephens, J.

Johnson, J.

Wiggins, J.

Madsen, C.J.